**STATE of Missouri, Respondent,**

v.

**Russell S. ROARK, Appellant.**

**No. WD 41407.**

Missouri Court of Appeals, Western District.

Dec. 5, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1990.

Application to Transfer Denied March 13, 1990.

Sean D. O'Brien, Public Defender, David S. Durbin, Appellate Defender, John L. Vohs, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

ULRICH, Judge.

Russell S. Roark appeals from convictions of second degree burglary and stealing over $150 and from concurrent five-year sentences. He contends that the trial court erred in refusing to strike a venireman for cause. Reversed and remanded.

After the voir dire examination, Mr. Roark's trial attorney moved to strike venireman John Minzes from the venire for cause, contending that Mr. Minzes could not be impartial to a defendant who will not have testified. During the voir dire

examination, the following inquiry and response occurred:

DEFENSE COUNSEL: If the Court instructs you that under the law the defendant has the right not to testify, no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify, is there anybody that would not be able to follow that instruction? Anybody that would have a difficulty reconciling that instruction with a natural reaction we all had that we all wanted to hear from Mr. Roark?

Mr. Elkin?

VENIREMAN ELKIN: Yeah. I think I—I believe I would have a hard time reconciling that. Yes.

DEFENSE COUNSEL: And that's because you would want to hear both sides? Kind of a natural reaction?

VENIREMAN ELKIN: Yeah. I would want to hear both sides.

. . . .

DEFENSE COUNSEL: ... So what I guess I'm asking is can you put that natural human reaction out of your mind and follow the constitutional law that he doesn't have to testify or he may not want to for one of any number of reasons?

VENIREMEN ELKIN: Not if I had questions.

DEFENSE COUNSEL: So you think you would have problems?

VENIREMAN ELKIN: Yes. I think if there was information that I couldn't receive because of that, I would have problems.

DEFENSE COUNSEL: Okay. So you would have trouble following that instruction?

VENIREMAN ELKIN: I really think I would. Yeah.

. . . .

DEFENSE COUNSEL: Anybody else who feels the same way?

VENIREMAN MINZES: I have a little bit of trouble with it.

DEFENSE COUNSEL: Because of that?

VENIREMAN MINZES: Yes. Someone ought to answer charges against him, Constitution or not.

DEFENSE COUNSEL: You think you would have difficulty following those instructions?

VENIREMAN MINZES: I could accept them. I'm like the gentleman up there.

Later in the voir dire examination, Mr. Warhurst, defense counsel, and the prosecutor further questioned certain venirepersons who had expressed that they would have difficulty following the court's instructions requiring that they not impute guilt or infer anything because the defendant did not testify.

DEFENSE COUNSEL: Now, Ms. Bogart, I'll try one more time and rephrase the question.

If the Court would instruct that under the law the defendant has the right not to testify, no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that defendant did not testify, would you be able to follow that instruction in all its parts?

VENIREMAN BOGART: I think so. Yes.

. . . .

PROSECUTOR: When you were asked about the possibility of defendant not testifying, the question was phrased in terms of whether it would be hard for you, if I recall correctly. Obviously jurors are called on to do hard things. I would like to phrase that question a little differently and ask of you the same question that was asked of Ms. Bogart, and that is if you are given the instruction which was read to Mr. Bogart would you be able to follow it?

VENIREMAN ELKIN: I would try to follow it. I can't guarantee that I couldn't.

PROSECUTOR: I appreciate your honesty, sir. Mr. Minzes, again, I won't pick on you, but I'll ask you that same question. If you were given the same instruction that was read to Ms. Bogart would you be able to follow it?

VENIREMAN MINZES: I believe so.

Mr. Roark asked the trial court to strike both Mr. Elkin and Mr. Minzes for cause. The trial court sustained Mr. Roark's challenge of Mr. Elkin, but overruled his challenge of Mr. Minzes. Consequently, Mr. Roark used one of his peremptory strikes to remove Mr. Minzes from the jury. Mr. Roark did not testify during the trial.

As his sole point on appeal, Mr. Roark contends that the trial court erred in refusing to strike Mr. Minzes from the venire for cause. Mr. Roark claims that Mr. Minzes should have been excused from the venire because he did not unequivocally state that he could follow the court's instruction and not presume the defendant guilty or infer anything if the defendant did not testify.

■ A defendant in a criminal case is entitled to a panel of qualified jurors before he is required to make his peremptory challenges. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). The denial by a trial court of a defendant's legitimate request to excuse for cause a prejudiced venireperson constitutes reversible error. *State v. Morrison*, 557 S.W.2d 445, 446 (Mo. banc 1977). In such an inquiry, whatever personal opinions a juror has about the law are immaterial except when they are so unyielding as to preclude a juror from following the court's instructions. *State v. Johnson*, 670 S.W.2d 882, 887 (Mo. App.1984).

■ When determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Stewart*, 692 S.W.2d 295, 298 (Mo. banc 1985). However, appellate courts are not required to give blind deference to a trial judge's exercise of discretion, and should review the record and determine whether the trial judge abused his discretion. *State v. Brooks*, 693 S.W.2d 211, 214 (Mo.App.1985). Where a juror gives equivocal answers which reveal uncertainty as to his ability to be impartial, the absence of an independent examination by a trial judge justifies a more searching review by an appellate court of the challenged juror's qualifications. *State v. Williams*, 643 S.W.2d 832, 834 (Mo.App.1982).

■ The critical test when inquiring of a venireman about his ability to follow the court's instructions is whether the venireman's response is equivocal or unequivocal to questions intended to rehabilitate him. *State v. Weatherspoon*, 728 S.W.2d 267, 271 (Mo.App.1987); *Brooks*, 693 S.W.2d at 214. Where a potential juror's response was unequivocal, the appellate courts have affirmed a trial court's refusal to strike for cause. *Id.* However, where a venireman gave equivocal answers, the appellate courts have reversed the refusal to strike for cause. *Id.* The entire examination of a venireman is considered when determining whether a venireman is qualified to serve as a juror. *Weatherspoon*, 728 S.W.2d at 271.

■ Mr. Minzes' initial responses to whether he could follow the court's instruction not to presume the guilt of a non-testifying defendant or to infer anything because the defendant refused to testify were sufficient absent rehabilitation to require that Mr. Minzes be stricken for cause. He stated that he would have difficulty following such an instruction, adding, that when someone is charged with a crime, he "ought to answer charges against him, Constitution or not." Upon further inquiry, Mr. Minzes said that he could "accept" the court's instructions but that his attitude and ability to follow instructions on the matter were similar to Venireman Elkin's. Mr. Elkin was stricken for cause because he expressed the inability to follow the court's instruction not to impute guilt or infer anything from the defendant's failure to testify. Mr. Elkin stated that he "would want to hear both sides," and that he would have difficulty following the court's instruction because "there was information that he couldn't receive" if the defendant did not testify.

Later in the voir dire examination, the prosecutor attempted to rehabilitate Venireman Minzes by again asking him if he could follow an instruction that prohibits a juror from drawing a negative inference from a defendant's refusal to testify. Mr. Minzes responded by saying, "I believe so."

The response has repeatedly been characterized by Missouri courts as too equivocal to justify a trial court's refusal to strike a juror for cause. *State v. Payne*, 639 S.W.2d 597, 599 (Mo. banc 1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Williams*, 643 S.W.2d at 834. Considering Mr. Minzes' responses to all inquiries about his attitude concerning the failure of a defendant to testify and his stated inability to follow the court's instruction not to presume guilt or infer anything from the defendant's unwillingness to testify, his response that he "believed" he could follow the court's instruction was equivocal.

The record presented and the applicable case law required that the court strike venireman Minzes for cause. Mr. Minzes' answers to voir dire inquiry revealed uncertainty that he could be impartial to a non-testifying defendant and follow the court's instruction requiring no imputation of guilt or any inference because of the defendant's refusal to testify. The failure of the court to strike Mr. Minzes from the venire was contrary to the evidence and a clear abuse of discretion.

The judgment is reversed and the cause remanded for a new trial.

All concur.