**STATE of Missouri, Respondent,**

v.

**Richard L. MARTIN, Appellant.**

**No. 17679.**

Missouri Court of Appeals,
Southern District,
Division One.

May 11, 1992.

Marcie W. Bower, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Richard L. Martin, was found guilty by a jury of driving while intoxicated and sentenced by the trial court to four years' imprisonment per § 577.023.3, RSMo 1986. He appeals, presenting one point relied on; it reads:

> The trial court abused its discretion in overruling Appellant's challenge for cause of venireperson Charles Lindsey ... in that [Lindsey] gave answers on voir dire indicative of an inability to sit as a fair and impartial juror, since Mr. Lindsey was unable to state unequivocally that he could render a verdict unless Appellant testified, and his answers indicated his inability to hold the State to its burden of proof. The trial court's actions prejudiced Appellant, because he was denied his right to a full panel of qualified jurors before making his peremptory strikes.

As Appellant does not challenge the sufficiency of the evidence to support the ver-

dict, we set forth only the portion of the record pertinent to his claim of error.

During voir dire, this dialogue occurred:

MS. BRANYAN[1]: ... Mr. Martin has a right to testify in this case if he wants to, and that's his choice and a decision that he can make or not make. The judge will read you an instruction at the end of the case and he will tell you that Mr. Martin has a right to make that decision.

The instruction will tell you that you can't hold that against him. But that's a hard—that's a hard thing to do. It's much easier to say it than it is to actually put it into practice because there's a natural feeling, a natural desire, to hear what everyone is going to say in a case.

If you were not to hear Mr. Martin testify in this case, how do you think you would feel about that, Mr. Lindsey?

VENIREMAN LINDSEY: It wouldn't make any difference.

MS. BRANYAN: Do you think you would be able to just make a decision based on the evidence you heard?

VENIREMAN LINDSEY: Well, if the evidence was from both sides, yes.

MS. BRANYAN: How would you feel if the evidence wasn't from both sides, that if only the state puts on witnesses?

VENIREMAN LINDSEY: Well, it would appear to be kind of one-sided if they were the only one that had anything to say.

MS. BRANYAN: You think if someone had something to say on it, they'd take the stand?

VENIREMAN LINDSEY: I would think.

MS. BRANYAN: And that's something that you would be wondering when you were in the jury room as to why someone maybe didn't take the stand?

VENIREMAN LINDSEY: [Nods his head.]

MS. BRANYAN: Is that a problem? Is that a fair thing to say?

VENIREMAN LINDSEY: I think so.

MS. BRANYAN: Okay. All right. Would it be more difficult, do you think, to return a verdict without having heard Mr. Martin's version?

VENIREMAN LINDSEY: I think there would always be a question as to why.

MS. BRANYAN: Okay. Fair enough. Thank you.

. . . .

THE COURT: ... Mr. Lindsey, let me just give a slight further word of explanation. The state has the burden of proving their case beyond a reasonable doubt, as you've heard in the instruction already. Can you evaluate the evidence that's presented, whether it's just from the state or whether it's from both sides, to see if that evidence meets that criteria, and return a verdict without regard to whether or not the defendant testifies?

VENIREMAN LINDSEY: I think so.

After voir dire, Appellant made his challenges for cause. The transcript shows:

MS. BRANYAN: ... Charles Lindsey ... had a real difficult time with the proposition that if Mr. Martin didn't testify, then he could not hold it against him and could not go into the jury room and wonder why in the world he didn't testify. . . .

THE COURT: Of course once I explained to Mr. Lindsey that he can decide the case based on what evidence the state presented, he seemed to agree with that all right. . . . I didn't find that he really had much more difficulty than any of the rest. It was just a question of getting focused. I'm going to deny the challenge for cause. . . .

Venireman Lindsey was one of the 24 members of the venire constituting the panel from which the jury was chosen. Appellant used one of his peremptory challenges against Lindsey.

Appellant did not testify or otherwise present evidence.

■ An accused is entitled to a full panel of qualified jurors before making

---

1. Appellant's lawyer.

peremptory challenges, and even though an unqualified juror does not actually serve, it is prejudicial error to fail to sustain a meritorious challenge for cause. *State v. Schnick,* 819 S.W.2d 330, 333[1, 2] (Mo. banc 1991). In determining whether a challenge for cause should be sustained, each case must be judged on its facts. *State v. Hopkins,* 687 S.W.2d 188, 190[3] (Mo. banc 1985).

■ A trial court has wide discretion in determining the qualifications of members of the venire, and an appellate court will not disturb a trial court's ruling on a challenge for cause absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Walton,* 796 S.W.2d 374, 377[7, 8] (Mo. banc 1990). The trial judge is in a far better position than the appellate court to determine whether to strike a venireman for cause, hence all doubts as to the trial court's findings are to be resolved in its favor. *State v. Leisure,* 796 S.W.2d 875, 880 (Mo. banc 1990). *Leisure* involved a venire member who stated she would find it a "problem" that the accused would not testify on his own behalf. The Supreme Court of Missouri held the venire member's subsequent assurance to the trial court that she would follow the law on the matter and not hold the accused's silence against him was sufficient to uphold the trial court's denial of the accused's challenge for cause. *Id.*

■ Appellant relies principally on *State v. Roark,* 784 S.W.2d 194 (Mo.App.1989). There, the Western District of this Court held a venireman's initial responses to whether he could follow the instruction not to presume the guilt of a non-testifying defendant and to infer nothing because the defendant refused to testify were sufficient, absent rehabilitation, to require that the venireman be stricken for cause. *Id.* at 197[8]. Among the venireman's comments was, "Someone ought to answer charges against him, Constitution or not." Attempting to rehabilitate the venireman, the

prosecutor asked whether he could follow an instruction that prohibits a juror from drawing a negative inference from a defendant's refusal to testify. The venireman responded, "I believe so." *Id.*

*Roark* declared, "The response has repeatedly been characterized by Missouri courts as too equivocal to justify a trial court's refusal to strike a juror for cause." *Id.* at 198. The opinion continued:

Considering [the venireman's] responses to all inquiries about his attitude concerning the failure of a defendant to testify and his stated inability to follow the court's instruction not to presume guilt or infer anything from the defendant's unwillingness to testify, his response that he "believed" he could follow the court's instruction was equivocal.

784 S.W.2d at 198.

*Roark* held the denial of the accused's challenge for cause was an abuse of discretion, and consequently reversible error. *Id.*

Here, venireman Lindsey's comments, in their entirety, do not manifest the intransigence of the venireman in *Roark*. Lindsey stated it would make no difference if Appellant did not testify. Next, Lindsey said he could make a decision if the evidence was from both sides, apparently mindful that Appellant could present evidence without testifying himself. Asked how he would feel if only the State presented witnesses, Lindsey responded it would appear "to be kind of one-sided." None of these statements demonstrate an inability to follow MAI–CR 3d 308.14, given by the trial court as Instruction 8.[2]

Lindsey was then asked whether he thought "someone" would take the stand if he had something to say. Lindsey answered, "I would think." Lindsey acknowledged he would wonder in the jury room why "someone" didn't take the stand. He also conceded there would be a question as to why he had not heard "Mr. Martin's version." However, unlike the venireman in *Roark*, nowhere in his comments did

2. Instruction 8, given at Appellant's request, reads: "Under the law, a defendant has the right not to testify. No presumption of guilt may be

raised and no inference of any kind may be drawn from the fact that the defendant did not testify."

Lindsey express a belief that Appellant *should* testify, "Constitution or not."

Upon being asked by the trial court if he could evaluate the evidence, whether from just the State or from both sides, to determine whether the State had met its burden of proof beyond a reasonable doubt, and return a verdict without regard to whether Appellant testified, Lindsey answered, "I think so."

As the State's brief points out, Appellant's lawyer, in questioning Lindsey, phrased some of the inquiries with the term "think." Lindsey adopted the term in some of his answers.

As aptly observed in *State v. Pride*, 567 S.W.2d 426, 433 (Mo.App.1978), the phrase "I don't really think so" is commonly used to express a negative and is not equivocal. *Pride* explained, "As much as judges and lawyers might desire it, people generally do not speak in absolutes, probably because they realize that few things are ever absolute." *Id.*

In *State v. Mercer*, 618 S.W.2d 1 (Mo. banc 1981), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981), responses similar to venireman Lindsey's were held sufficiently unambiguous to make it unmistakably clear that five members of the venire would not impose the death penalty under any circumstances. 618 S.W.2d at 7[1] and Appendix at 11–13.

■ Where an answer to a question suggests a possibility of bias and, upon further questioning, the venireman gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify the juror or deprive the trial judge of discretion to seat the venireman. *Walton*, 796 S.W.2d at 377[6]. It must clearly appear from the evidence that the challenged venireman was in fact prejudiced. *Id.*

Here, the trial court was able to observe venireman Lindsey's demeanor, evaluate his responses in the context of the entire dialogue between him and Appellant's lawyer, and take into account that both chose to employ the term "think" during their exchanges.

■ A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; there will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion; each case must be judged on its particular facts; a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

■ In the instant case, the trial court obviously found venireman Lindsey's comments, in context and in the aggregate, showed he could decide the case on the evidence presented, without regard to whether Appellant testified. Given the discretion with which the trial court is vested and the deference accorded its rulings, we cannot convict the trial court of prejudicial error in denying Appellant's challenge of venireman Lindsey for cause. Appellant's point relied on is denied.

We observe, however, as did *Walton*, 796 S.W.2d at 379, that it is puzzling when a trial court runs the risk of prejudice and reversal by denying a hairline challenge for cause when the risk can so easily be avoided.[3]

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.

---

**3.** The jury list shows there were several extra members of the venire.