

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| VICTOR R. LIBEER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD85892 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | March 5, 2024 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable James F. Kanatzar, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and W. Douglas Thomson, Judges

Victor Libeer ("Libeer") appeals from the judgment entered by the Circuit Court

of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his

motion for post-conviction relief ("PCR") pursuant to Rule 29.15. We affirm.

## Factual and Procedural History[1]

In 2012, Libeer's then sixteen-year-old biological daughter, Victim, learned she

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)).

was pregnant.[2]  After she gave birth in February 2013, she initially refused to disclose the father's identity.  A paternity test identified[3] Libeer as the father.  Libeer pleaded guilty to incest and second-degree statutory rape in *Jasper* County.  Authorities in *Jackson* County then investigated potential instances of earlier abuse when Victim lived with Libeer in Blue Springs.  Over the course of several therapy sessions, Victim revealed that Libeer first began having sexual intercourse with her when she was eleven years old, and a caseworker assisted Victim in submitting a police report to Jackson County.  Libeer was charged with two counts of first-degree statutory rape in Jackson County for incidents occurring in 2007 and 2008.  The case proceeded to trial in February 2019.

During jury selection for the trial, the State questioned the venirepersons on their ability to presume Libeer innocent:  "I'd like to begin with the concept that the defendant as he sits here today is presumed innocent.  There's no inference of guilt because the defendant has been charged with a crime.  Is there anyone who does not agree with that statement?"  No venireperson objected.  Libeer's trial counsel followed up with the panel on the issue during his questioning.  After explaining the presumption of innocence— noting in part that "[Libeer] remains presumed innocent throughout this trial unless and until, upon your deliberations upon the evidence, you find him guilty beyond a reasonable doubt"—Libeer's trial counsel asked:  "Is there anyone that is considering [Libeer] guilty right now or not presuming him innocent?"  Again, no venirepersons

---

[2] Many of the underlying facts are taken directly from the legal memorandum supplementing the *per curiam* order issued to Libeer in his direct appeal, *State v. Libeer*, 607 S.W.3d 282 (Mo. App. W.D. 2020), without further attribution.

[3] The test specified a 99.999% chance of Libeer's paternity.

raised their hands.[4]  Libeer's trial counsel then questioned the panel on the burden of

proof and Libeer's right to not testify before questioning them on Libeer's prior

convictions from Jasper County:

> So one of the big issues in this case that hasn't been addressed yet at all is that in September of 2015, Victor Libeer pled guilty to statutory rape in the second degree and incest in Jasper County, Missouri, which is in Carthage.  This happened in Carthage.  He pled guilty to the same, to basically the same exact conduct with the same victim that is alleged in this case.  Okay?
>
> . . . .
>
> So with that information that is undisputed, it's a fact in this case, with that new information I need to go, basically go through almost all the same questions.  Does that change your perspective on this case?

The State's attorney objected, and at a bench conference, the trial court overruled

the objection as premature and instructed Libeer's trial counsel on the proper

scope of the questioning.  Libeer's trial counsel resumed his questioning:

> I want to make sure I get more specific with you.  We talked about this presumption of innocence.  Everyone, most everyone said they are presuming Mr. Libeer innocent at this time, they can follow the Court's instructions to continue to presume him innocent throughout this trial, so this is what I want to double back to.
>
> Knowing that Mr. Libeer has been convicted of the same conduct with the same victim, are you going to be able to follow the Court's instructions to presume him innocent throughout the course of this trial?
>
> Is there anyone that, knowing that, is not going to be able to presume him innocent throughout[?]

---

[4] Although no venirepersons raised their hands to this question, two later indicated doubts on whether they could withhold their judgment on the evidence until the end of trial:  "Depending on what evidence is presented, I could see myself swaying a little bit toward maybe making conclusions before.  I'm just being honest."  Both venirepersons were eventually struck for cause without objection.

The first venireperson to respond, Venireperson 14, stated: "There's no way." The next venireperson, Venireperson 16, responded: "There would be a strong bias going in after hearing that." Libeer's trial counsel then clarified:

> So you would have a strong bias going in. You would—I want to clarify. You can have a bias. You can still be fair and impartial with a bias, right? So what I want to know is would you be able to follow the Court's instructions to presume him innocent throughout the trial, knowing that information?

Upon this clarification, Venireperson 16 agreed she could follow the trial court's instructions.[5] Each of the next ten venirepersons expressed some level of difficulty presuming Libeer's innocence. Libeer's trial counsel prompted each of them to specify whether this difficulty would prevent them from following the trial court's instructions, and nine of them indicated they could not follow the trial court's instructions. The lone venireperson who could agree to follow the trial court's instructions, Venireperson 65,[6] noted the difficulty in doing so, prompting Libeer's trial counsel to make a general admonishment to the whole panel:

> VENIREPERSON 65: It does it make [sic] difficult. It makes it difficult for your client, in my mind.
>
> TRIAL COUNSEL: So it would create some issues for you, but you could follow the instructions and presume him innocent?
>
> VENIREPERSON 65: Yes.

---

[5] Libeer's trial counsel explained this distinction to a total of four venirepersons who answered that presuming Libeer's innocence would be "difficult" or "hard." Two, Venirepersons 16 and 65, indicated they could follow the instructions while the other two indicated they could not.

[6] Venireperson 65 was the third out of this group of ten to be questioned.

TRIAL COUNSEL:  And that's what I'm getting at here.  Yeah, difficult. Nobody is saying it wouldn't be difficult.  What I want to know is if it's more than difficult, something you can't do.  Anybody else?

After those ten venirepersons, the questioning reached Venireperson 24:

TRIAL COUNSEL:  I have this whole section over here.  I don't want to miss anybody.  Number 24?

VENIREPERSON 24:  I had [my hand] up.  I didn't want be [sic] I'm wishy-washy.  You clarified a little better.  It would definitely make it difficult.  Could I still follow the instructions?  Yes.

TRIAL COUNSEL:  You could follow the instructions[?]

VENIREPERSON 24:  But it would influence.  It would make it difficult.

TRIAL COUNSEL:  Sure.  Got you.

Venireperson 24 did not answer any other questions during voir dire and was not challenged for cause.  He ultimately served on the jury, which convicted Libeer on both counts of first-degree statutory rape.  The trial court sentenced Libeer to two life terms of imprisonment to be served consecutively with each other and the prison sentence imposed in Jasper County.  Libeer timely appealed.

In his direct appeal, Libeer argued a different juror, Venireperson 39, should have been struck for cause *sua sponte* because she was uncertain of her ability to presume Libeer innocent after hearing about his prior convictions.  In rejecting this argument, we found that the State successfully rehabilitated Venireperson 39 by securing her unequivocal affirmation that she would not convict Libeer unless the State met its burden of proof based solely on the evidence presented at trial.  We affirmed Libeer's convictions.

5

Libeer then timely filed this PCR motion, asserting in relevant part that Venireperson 24's proclaimed difficulty in presuming Libeer's innocence after hearing about Libeer's prior convictions rendered Venireperson 24 unqualified to serve on the jury and arguing that his trial counsel was ineffective for failing to seek to strike Venireperson 24 for cause. An evidentiary hearing was held on February 16, 2022, and the motion court entered an order denying the PCR motion on December 12, 2022. This appeal followed.

## Standard of Review

> In reviewing the overruling of a motion for post-conviction relief, the motion court's ruling is presumed correct. A motion court's judgment will be overturned only when either its findings of fact or its conclusions of law are clearly erroneous. To overturn, the ruling must leave the appellate court with a definite and firm impression that a mistake has been made.

*McLaughlin v. State*, 378 S.W.3d 328, 336-37 (Mo. banc 2012) (citations omitted) (internal quotation marks omitted).

## Analysis

In his sole point on appeal, Libeer argues the motion court erred in denying his claim that his trial counsel was ineffective for failing to request Venireperson 24 be stricken for cause.

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 688 (1984)). Under *Strickland*, the movant must demonstrate: "(1) his trial counsel failed to exercise the level of skill and diligence

6

that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* (internal quotation marks omitted) (citing *Strickland*, 466 U.S. at 687). If movant fails to prove either prong, relief cannot be granted. *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023). And if the movant fails to satisfy one prong, we need not address the other. *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021); *Shores v. State*, 674 S.W.3d 127, 133 (Mo. App. W.D. 2023).

Generally, the decision to strike a venireperson is a matter of trial strategy which cannot give rise to an ineffective assistance of counsel claim as long as the decision is reasonable. *Proudie v. State*, 644 S.W.3d 41, 50 (Mo. App. E.D. 2022) (citing *Thompson v. State*, 583 S.W.3d 529, 533 (Mo. App. W.D. 2019)); *Pearson v. State*, 280 S.W.3d 640, 646 (Mo. App. W.D. 2009) (Where "the record does not show [the challenged venireperson] to have been an unqualified juror, the presumption of effectiveness [is] not overcome by counsel's failure to challenge . . . ."). However, "[d]efense counsel's failure to challenge for cause a biased or unqualified juror is ineffective assistance, absent a reasonable trial strategy for keeping that juror on the panel." *McGuire v. State*, 523 S.W.3d 556, 564 (Mo. App. E.D. 2017); *Pearson*, 280 S.W.3d at 645 ("[W]here a venireperson has admitted significant bias and has not been rehabilitated, counsel's failure to challenge the biased juror overcomes the presumption of effectiveness . . . ."). "To find counsel's performance deficient for failing to strike a juror, the likelihood of the trial court granting the motion must be shown to a reasonable probability; counsel is not deficient for failing to do a futile act." *Pearson*, 280 S.W.3d at 647. If a movant can demonstrate that counsel's ineffective assistance during the jury selection process

resulted in a biased venireperson serving on the jury, then the prejudice prong of *Strickland* is presumed satisfied. *Scott v. State*, 183 S.W.3d 244, 248 (Mo. App. E.D. 2005).

"A criminal defendant is entitled to a full panel of qualified jurors before he is required to expend his peremptory challenges[.]" *State v. Wheat*, 775 S.W.2d 155, 158 (Mo. banc 1989). "To qualify as a juror, the venireman must be able to enter upon that service with an open mind, free from bias and prejudice." *Id.* "The relevant inquiry is whether a prospective juror can follow the law." *State v. Chaney*, 967 S.W.2d 47, 57 (Mo. banc 1998). In contrast, jurors are unqualified when their responses reveal views that would "substantially impair their performance as jurors (including the ability to follow instructions on the burden of proof)." *Hosier v. State*, 593 S.W.3d 75, 90 (Mo. banc 2019) (internal quotation marks omitted) (quoting *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010)). "The qualifications for a prospective juror are not determined from a single response, but rather from the entire examination." *Deck*, 303 S.W.3d at 535; *see also Proudie*, 644 S.W.3d at 51 (looking to "the record as a whole" to determine whether a juror was unqualified due to alleged bias against the defendant). "A possibility of prejudice is not sufficient to disqualify a juror: 'It must clearly appear from the evidence that the challenged venireperson was in fact prejudiced.'" *Pearson*, 280 S.W.3d at 646 (quoting *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990)). "Mere equivocation is not enough to disqualify a juror." *Joy v. Morrison*, 254 S.W.3d 885, 890 (Mo. banc 2008).

The decision to strike a juror for cause is within the trial court's discretion and will not be disturbed "unless it is clearly against the evidence and amounts to a clear abuse of discretion." *State v. Storey*, 40 S.W.3d 898, 904 (Mo. banc 2001) (citing *State v. Barnett*, 908 S.W.2d 297, 303 (Mo. banc 1998)). "As much as judges and lawyers might desire it, people generally do not speak in absolutes, probably because they realize that few things are ever absolute." *Proudie*, 644 S.W.3d at 51 (quoting *Ogle v. State*, 807 S.W.2d 538, 542 (Mo. App. S.D. 1991)).

Libeer asserts that Venireperson 24 was not qualified to serve on the jury because his responses indicated that knowledge of Libeer's prior convictions would affect his ability to follow the trial court's instruction to presume Libeer innocent. However, the larger context of the *voir dire* preceding Venireperson 24's responses demonstrates that Venireperson 24 unequivocally stated he could follow the law as stated in the trial court's instructions, which is all that is required to be a qualified juror. *See Chaney*, 967 S.W.2d at 57; *Hosier*, 593 S.W.3d at 90.

Before questioning Venirperson 24, Libeer's counsel clarified the key distinction—between not being able to follow the trial court's instruction on Libeer's presumed innocence and recognizing that following the instruction would be *difficult but doable*—four times with individual venirepersons and once as a general admonition to the entire panel. Each of the venirepersons that Libeer's counsel paused with to clarify the distinction initially answered that they would have a hard time presuming Libeer innocent. However, after Libeer's counsel explained this distinction, two of those venirepersons agreed they *could* follow the trial court's jury instructions. Additionally,

9

several venirepersons preceding Venireperson 24's questioning indicated they *could not* presume Libeer innocent; almost all of them were further prompted by Libeer's counsel to indicate specifically whether they could follow the trial court's instructions, and all who were prompted affirmatively confirmed that they *could not*.

This line of questioning reached Venireperson 24 after nearly ten minutes of the same line of questioning with other members of the venire panel. In that time, Venireperson 24 watched several other venirepersons navigate this distinction. Venireperson 24's initial response, "It would definitely make it difficult. Could I still follow the instructions? Yes," explicitly affirmed his ability to follow the trial court's instructions and indicated that he recognized and appreciated the distinction. Then, Libeer's trial counsel asked for confirmation: "You could follow the instructions[?]" Venireperson 24's response, "But it would influence. It would make it difficult," was not an equivocation or retraction of his prior answer. Instead, Venireperson's second response was merely an acknowledgment that following the instructions would be *difficult but doable*,[7] which did not demonstrate a bias that would give rise to disqualification. *See Proudie*, 644 S.W.3d at 51.

---

[7] Libeer cites several cases that he claims demonstrate the proposition that Missouri courts have long held that a juror who has difficulty with the presumption of innocence should not serve on a criminal jury. None are applicable here. In each case cited, the venirepersons at issue initially and unequivocally indicated that they would be *unable* to follow the trial court's instructions, and they were *not* subsequently rehabilitated with an unequivocal statement that they could follow the trial court's instructions. *White v. State*, 290 S.W.3d 162, 166 (Mo. App. E.D. 2009) ("Here, because there were no follow-up questions to [Venireperson] addressing his assertion that he could not be fair . . . neither the State, defense counsel, nor the trial court rehabilitated [Venireperson], and he was not qualified to serve as a juror."); *James v. State*, 222 S.W.3d 302, 307 (Mo. App. W.D. 2007) (holding that a venireperson was unqualified to

Thus, we agree with the motion court's conclusion that an attempt to strike

Venireperson 24 for cause would not have been successful because the totality of

Venireperson 24's responses indicated he could follow the trial court's jury instructions

impartially. "[C]ounsel cannot be deemed ineffective for declining to make a non-

meritorious objection." *Clemmons v. State*, 785 S.W.2d 524, 529 (Mo. banc 1990);

*Hosier*, 593 S.W.3d at 87 (citing *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007)).

"Furthermore, the motion court in this case was the same as the trial court,

who . . . had an opportunity to observe the *voir dire* at trial. 'Special deference is given

when the [motion] judge and the [trial and sentencing] judge are the same.'" *Beck v.

State*, 637 S.W.3d 545, 557 (Mo. App. W.D. 2021) (quoting *Dawson v. State*, 611

S.W.3d 761, 767 (Mo. App. W.D. 2020). The motion court did not clearly err in

determining that Venireperson 24 was a qualified juror and that Libeer's trial counsel was

---

serve when she stated, "[I]f I knew I wasn't guilty of a crime, I would want people to
know that I wasn't guilty. So I would like to speak," and was not subsequently
rehabilitated); *State v. Grondman*, 190 S.W.3d 496, 499 (Mo. App. W.D. 2006) ("[B]ut
defense counsel subsequently re-established that [Venireperson] had lingering concerns
about a defendant who did not speak up for himself. Ultimately, [Venireperson] admitted
that she would 'lean' toward finding the defendant guilty in a close case if he did not
testify."); *State v. Roark*, 784 S.W.2d 194, 196-98 (Mo. App. W.D. 1989) (holding that
the venireperson responding, "I believe so," to whether they could follow the court's
instructions after initially stating, "[s]omeone ought to answer charges against him,
Constitution or not," was not sufficient rehabilitation); *State v. Stewart*, 692 S.W.2d 295,
299 (Mo. banc 1985) ("[Venireperson] never unequivocally stated that she would not
draw any inference of guilt from defendant's failure to testify.").

    In contrast here, Venireperson 24 made an unequivocal statement that he *could*
follow the instructions and never stated or implied he would be unable to, even if he did
acknowledge it would be difficult; Venireperson 24 did not make a statement during *voir
dire* that required any rehabilitation beyond the colloquy that preceded and was included
in Venireperson 24's statements during *voir dire*.

not constitutionally deficient for failing to raise what would have ultimately been a futile challenge for cause.

Having failed to meet his burden of proving the performance prong of his ineffective assistance of counsel claim on appeal, we need not and do not discuss the prejudice prong.

Libeer's point on appeal is denied.

### Conclusion

The motion court's judgment is affirmed.

_____

Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and W. Douglas Thomson, Judges, concur.