**STATE of Missouri, Respondent,**

v.

**Richard Evlyn BYRD, Appellant.**

**No. 49141.**

Supreme Court of Missouri,

Division No. 2.

Oct. 8, 1962.

Andrew S. Meyer, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Pendleton Goodall, Jr., Special Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was convicted by a jury of the crime of robbery with a dangerous and deadly weapon. The court having found one prior felony conviction (§ 556.280, RS Mo 1959, V.A.M.S.[1]), sentenced defendant to a term of twenty years' imprisonment and he has appealed in due course. No brief has been filed here in his behalf, so we consider the motion for new trial and those matters which we rule independently under Criminal Rule 28.02, V.A.M.R. In view of the limited nature of the error so claimed, we shall digest the evidence rather briefly.

The Forrest Market at 2310 Farrar Street in the City of St. Louis was robbed by two armed men shortly before 7:00 p. m. on January 13, 1961. These men put the owners, two employees and three customers in the cooler, rifled the cash register and took money and a book of money order blanks from a cigar box nearby; they forced Mr. Forrest to open the safe and took the money from the safe, together with another money order book and certain licenses. The evidence showed that the total of the money taken was $638. A neighbor, warned by the Forrests' son, shot at the two men as they left the store and one or both returned the fire, but all concerned missed their targets and the men ran down an alley adjoining the store.

One of these men wore a plaid shirt, a red sweater trimmed with black and showing a little white, a small black hat with a feather, and gloves; he had a woman's stocking pulled over his head and face. Witnesses at the trial positively identified defendant as that man; one witness stated that the stocking, stretched over his face, did not distort his features but seemed to make them clearer. The police brought defendant back to the store within approximately twenty minutes after the robbery and he was then identified by the owners. Certain of the witnesses to the robbery had noted a scar on defendant's left cheek; one had also noted a rather sharp nose, and a somewhat protruding lower lip. The lighting in the store consisted of overhead fluorescent lights, recently installed.

Two detectives, driving an unmarked police car in answer to the radio call on this robbery, saw a man who proved to be this defendant running across Natural Bridge Road not far from the scene of the robbery and ordered him to stop; when he kept on running they gave chase and he was finally hemmed in and caught. One or both of these officers had seen defendant throw something into a yard near the end of the chase. From defendant's person the of-

---

1. All statutory references will be to that revision.

ficers took a package of fifty one-dollar bills (later identified by Mrs. Forrest), and when he was booked at the station an additional $35 in bills was found on him. In the yard near the place where defendant was apprehended these officers found $287 in bills and one of the money order books. Other police officers had arrived at the scene of the robbery in a matter of minutes and immediately began a search of the neighborhood. In the search of the vicinity the officers, collectively, found a sweater, a black corduroy hat, a woman's stocking, two gloves, and a .32 caliber revolver fully loaded. All of these things were identified at the trial as similar to those worn or carried by the robber who was identified as the defendant. A small amount of money consisting of dimes, nickels and pennies, some of it in rolls, was also found in another yard. When defendant was brought back to the store within approximately twenty minutes after the robbery, he did not have a hat, sweater, gloves or revolver. The money order book found in the yard was definitely identified by Mrs. Forrest.

At the close of the State's evidence, defendant's counsel said in his opening statement that defendant would take the stand and would testify as to the circumstances of his arrest, and that he would show that "he was not the man * * *." However, before any such evidence was adduced, counsel asked leave to have defendant stand before the jury "for the purpose of appraising his face * * * in order to relate his appearance with the testimony * * *." The court noted that such would be premature, and asked if he was offering defendant as a witness; counsel answered "No," but stated that defendant would "eventually take the stand," and again asked that defendant be permitted to "stand before the jury simply involving his appearance, * * *" before he was sworn. The prosecutor objected to this, but immediately withdrew the objection "to him standing as an exhibit"; however, he specifically objected to defendant "trying on any clothes or stocking mask without first being sworn,

because then he is in effect testifying." This objection was sustained and counsel for defendant "excepted." (We note at this point that defendant's counsel had not actually proffered that type of exhibition, although we may presume from a later statement that he so intended.) At this point defendant was called as a witness by his counsel and was sworn; thereupon he put on the hat, stocking mask, gloves and sweater and exhibited himself so arrayed to the jury. Immediately upon the conclusion of those proceedings and upon examination by his own counsel, he testified in substance as follows: that just prior to his arrest he had been at a bowling alley; that he started across Natural Bridge Road and ran to avoid traffic; that after he got across he saw an unmarked car and a man with a gun in his hand, kept on running, and heard a shot; that the car finally blocked him and the men announced that they were police officers; that he had previously seen officer Mohan (one of the two) when he was questioned at a police station concerning a disturbance at a tavern, and that Mohan had threatened him; that nothing was found on him in this present instance except a wallet, some keys, a card, a police court summons, and $35.05 in money of his own; that at the station the officers mixed his money with a pile of other money which they brought in, and that they invited him to claim the whole pile. On cross-examination, he testified, among other things, that he had been at the bowling alley since about 4:00 p. m., that he had been convicted for uttering a forged instrument, and that he had received a sentence of three months for carrying a concealed weapon, which he stated was merely carried in a car. His explanation on cross-examination as to why he continued running tended to indicate that he knew he had been ordered to stop by police officers, but that he was afraid of them because an officer had previously threatened him.

The sole point raised in the motion for new trial, there stated copiously and in varying ways, is that the court erred and

thereby violated defendant's constitutional rights against self-incrimination in requiring him to be sworn and take the stand before he was permitted to try on the hat, gloves, stocking and sweater and so exhibit himself to the jury. Defendant claims, in other words, that in so doing the court subjected him to cross-examination, and that his only recourse would have been to forego the exhibition which he wished to make; and that, upon cross-examination, a prior conviction was shown to the jury. We note again that defendant's counsel had made no express offer of this procedure, but we prefer to decide the question on a broader basis. There is no doubt that such an exhibition would be material, in some respects, on the question of identity or the means of identification. Had defendant, upon an express offer to so exhibit himself, stood upon the court's ruling and refused to take the stand, we might have a different question here; and had defendant, when sworn, merely offered *that demonstrative evidence* and rested, we might conceivably still have a different question. But here, after exhibiting the defendant with and without the accoutrements, his counsel promptly and voluntarily brought out defendant's own defensive version of his arrest, its circumstances, and where he had been at the crucial time, together with the detailed recital of a supposed previous difficulty with one of the arresting officers; also, the specific happenings at the police station in this present instance. Therein he affirmatively attacked the credibility of certain police witnesses and affirmatively sought to establish an alibi. In the latter connection, and necessarily based on this testimony, the court gave an alibi instruction. Some of this testimony was elaborated upon cross-examination, defendant having opened up the field.

 When a defendant voluntarily takes the stand and testifies, he may be cross-examined, like any other witness, about prior convictions as affecting his credibility; and this is true despite the fact that evidence of prior convictions is now, so far as concerns punishment, a matter for the court and not for the jury. State v. Wolfe, Banc, Mo., 343 S.W.2d 10, 14. Here, after the proposed exhibition was concluded, defendant became a voluntary witness on the merits so as to subject himself to cross-examination. Counsel had twice stated previously that defendant *would* take the stand and testify. Those assertions cast considerable doubt upon the validity of the statement in the motion that defendant was forced to be sworn, and that he "would not have taken the stand had he been allowed to introduce the said evidence * * * without so doing." It seems obvious that defendant, having made his exhibition, elected to proceed with his affirmative testimony, taking his chances on convincing the jury. Thereby he certainly waived the error, if any there was, in requiring him to be sworn before he could exhibit himself; he made himself a witness generally, and for all purposes. When a defendant volunteers to testify in his own behalf he waives the privilege against self-incrimination to the extent that he may be cross-examined to the extent authorized by law. Section 546.260, RSMo 1959, V.A.M.S.; State v. Hill, Mo., 328 S.W.2d 656; State v. Swisher, 364 Mo. 157, 260 S.W.2d 6; State v. Brown, Mo., 312 S.W.2d 818. That principle is certainly applicable here. Defendant gave affirmative and voluntary testimony which put his own credibility in issue, and the State was entitled to show prior convictions.

The privilege afforded by the Federal and State Constitutions and by our statute may be waived. State v. Mosier, Mo., 102 S.W.2d 620, 628; State v. Tiedt, Banc, 360 Mo. 594, 229 S.W.2d 582, 587. Indeed the statute itself, § 546.260, supra, provides for a waiver upon the offer of defendant as a witness.

We find no error in that part of the record which we are required to examine under Rule 28.02. The judgment will be affirmed; it is so ordered.

All of the Judges concur.