STATE of Missouri, Respondent,

v.

Anthony L. BROOKS, Appellant.

No. WD 35708.

Missouri Court of Appeals,
Western District.

May 7, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
July 2, 1985.

Application to Transfer Denied
Aug. 7, 1985.

James W. Fletcher, Public Defender,
Sean D. O'Brien, Asst. Public Defender,
Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson
City, Philip M. Koppe, Asst. Atty. Gen.,
Kansas City, for respondent.

Before LOWENSTEIN, P.J., and NU-
GENT and BERREY, JJ.

LOWENSTEIN, Judge.

A jury found the defendant Anthony
Brooks guilty of second degree robbery;
he was sentenced to eight years. Only
sufficient facts will be presented to provide
background for Brooks' two points on ap-
peal. The victim, a Mr. Sample, testified
that after slowing down to make a u-turn
near 33rd and Troost, in Kansas City, a

woman walked in front of his car, went to the passenger's side and asked for a cigarette. Before he could pass one through the open window, the woman opened the door and got in. First she asked if Sample would like a date; upon a negative reply the woman said she had to have some money. The victim was struck on the face, then the woman got Sample's wallet, and then fled from the car on foot. Sample pursued in his car a few blocks, and then on foot until he saw a woman wearing the same coat as his assailant. During this scuffle Sample got hit on top of the head then grabbed at the woman's hair, and to his surprise he was left holding a wig. He realized now his assailant was a man, not a woman. Sample also pulled off the man's rabbit-fur patchwork coat, and picked up a purse the man dropped as he managed to run away.

At trial one police officer testified he had seen Brooks, a transvestite, wearing the rabbit-fur coat on another occassion. A second officer testified he recognized both the coat and purse as belonging to Brooks. The victim positively identified Brooks as the robber. Brooks had two witnesses, both transvestites, testify they were with Brooks in a motel at the time of the robbery. These witnesses also said the fur coat and purse belonged to Freddie Caldwell, also a transvestite who did not testify. A photograph was admitted into evidence showing Caldwell wearing the coat.

Brooks' first point on appeal concerns further testimony from one of these two witnesses, who had been his roommate, that Freddie Caldwell had admitted to committing the robbery. Brooks contends this testimony falls into the admission against penal interest exception to the hearsay rule. The trial court sustained the state's objection that an improper foundation had been laid for the witness to be questioned as to the out of court declaration of Caldwell.

At one time declarations against penal interests were not admissible in criminal proceedings in Missouri. *State v. Brown*, 404 S.W.2d 179, 185 (Mo.1966). Then the

United States Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), modified the rule to allow in some of these declarations. The Missouri Supreme Court followed the *Chambers* decision in *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981). Cases have focussed on two basic requirements before such hearsay is admissible: 1) the declarant is unavailable and 2) there is a "substantial indicia of reliability." *Id.* at 9. Both prongs of this test must be satisfied for the declaration to be allowed.

▆▆▆ In the present case the trial court specifically excluded the testimony on the grounds that Brooks had not proven that Caldwell was unavailable. Unavailability includes "death, insanity, illness, absence from the jurisdiction or supervening incompetency through interest." *State v. Grant*, 560 S.W.2d 39, 43 (Mo.App.1977). Unavailability can also be established if the declarant is at trial, but refuses to testify by asserting a fifth amendment privilege. *Turner*, 623 S.W.2d at 8, n. 4. In an offer of proof Brooks produced an investigator who testified he made two unsuccessful attempts to locate Caldwell, the last being over *two months* prior to the trial. Another witness said Caldwell's grandmother said he had been in a Huntsville, Texas jail. The witness who was attempting to testify knew Caldwell had "some robberies pending in Fort Worth." The trial court gave Brooks every opportunity to present other evidence in the offer of proof, but it wasn't until *after* the court sustained the objection that Brooks' attorney tried to interject that he had attempted to call Huntsville, Texas to find out if Caldwell was in Fort Worth, and had received a negative answer. The next day Brooks moved to reopen the issue with evidence that his investigator had now confirmed that Caldwell was indeed in prison in Huntsville, Texas serving a five year sentence for armed robbery.

The Missouri Supreme Court was careful to limit the rule of *Chambers* to the facts presented there, recognizing "the danger inherent in opening the door to extrajudicial confessions made by one not a party to

the proceeding." *Turner*, 623 S.W.2d at 9. In *Chambers* the declarant *was* present in the courtroom and could have been cross-examined by the state. The declarant had made second confessions, including a sworn statement. The court pointed out that the declarant's presence in the courtroom essentially defeated the state's argument for retention of the penal-interest rule. *Chambers*, 410 U.S. at 301, n. 21, 93 S.Ct. at 1049, n. 21.

Brooks either knew or should have known before trial that Caldwell was in a Texas prison. Brooks should then have taken the step of filing a motion for habeas corpus ad testificandum. While issuance of these writs rests within the trial court's discretion, *State v. Hines*, 645 S.W.2d 88 (Mo.App.1982), the defendant at least establishes a good faith attempt to produce the declarant. If the declarant is produced, but refuses to testify, then, as stated earlier, unavailability is again established. In this case there is a real doubt as to Brooks' good faith attempt to locate Caldwell, therefore the trial court did not err in refusing to admit this declaration. *State v. Carroll*, 629 S.W.2d 483 (Mo.App.1981), does not apply. It was there "substantially conceded by the prosecutor", that the witness was unavailable. *Id.* at 486.

Since the trial judge's ruling is being affirmed on the grounds it stated, the court need not address in detail whether there was substantial indicia of reliability or ring of truth to support Caldwell's declaration if he had in fact been unavailable. This point is denied.

Brooks' second point concerns the trial court's refusal to strike for cause one of the venire persons who indicated she felt a defendant should testify in his own behalf. Following is the pertinent part of the voir dire record:

VENIREMAN BURTON: Burton. Since I have reconsidered, if anyone wouldn't testify in their own behalf, I would have a tendency to—

MR. HOBBS: All right. Mrs. Burton?

VENIREMAN BURTON: Yes.

MR. HOBBS: If my client decided not to testify, then it would be very difficult for you to be a fair juror?

VENIREMAN BURTON: *I think it probably would.* I'm not real sure on that, according to how the testimony went, but it might be possible that I wouldn't.

MR. HOBBS: And if the Judge—if my client did not testify and the Judge were to instruct you that you are to draw no inference of guilt merely because my client did not testify, do you feel that you could follow that rule of law?

VENIREMAN BURTON: Well, if the Judge instructed me that way, I *probably* could.

MR. HOBBS: But it would be difficult for you to do so?

VENIREMAN BURTON: I'm afraid it would. I don't know, I've never been on anything like that but I would think that anyone would testify in their own behalf if they were—

MR. HOBBS: Would you rather not sit as a juror for the fact that that might happen?

VENIREMAN BURTON: *I think I probably shouldn't if he isn't going to testify.*

MR. HOBBS: Thank you.

THE COURT: Excuse me. Mrs. Burton?

VENIREMAN BURTON: Yes.

THE COURT: All of these questions are based upon one fact. The fact is, can you listen to the instructions of law and the evidence only in this case and decide this case solely upon the evidence that you hear and the instructions of law as given to you by the Court?

VENIREMAN BURTON: *Well, I think I could but—*

MR. HOBBS: I noticed you started to say something else. Is there by difficulty at all that you might have with that?

VENIREMAN BURTON: Well, I don't really know but it seems to me like *anyone should testify in their own behalf if they were innocent of a crime.*

MR. HOBBS: All right. And that might affect your ability to follow the instructions?

THE COURT: Mr. Hobbs, that's enough.

Missouri courts have long held that denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireperson, constitutes reversible error. *State v. Morrison*, 557 S.W.2d 445, 446 (Mo. banc 1977); *State v. DeClue*, 400 S.W.2d 50 (Mo.1966). The Missouri Supreme Court has held this proposition to be "rooted in the constitutionally guaranteed right of every accused to a public trial by an impartial jury ... and personifies a dedicated judicial effort to preserve inviolate this constitutionally guaranteed right in the broadest sense." *Morrison, supra.*

 This court is also governed by the proposition that a defendant is entitled to a panel of qualified jurors *before* he is required to make his peremptory challenges. *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984). While trial courts are afforded discretion in determining a challenged venireman's qualifications, appellate courts are "not required to give blind deference to a trial judge's exercise of discretion ... and should review the record and determine whether or not the trial judge, in fact abused his discretion." *State v. Thompson*, 541 S.W.2d 16, 18 (Mo.App.1976).

In reviewing the numerous opinions dealing with challenges for cause, the critical test appears to be whether the venireperson makes equivocal or unequivocal statements. In cases cited by the state where the appellate court *affirmed* a trial court's refusal to strike for cause, the potential juror gave an *unequivocal* answer to questions which rehabilitated him. *State v. Johnson*, 670 S.W.2d 882, 887 (Mo.App. 1984); *State v. Gray*, 657 S.W.2d 296, 299 (Mo.App.1983); *State v. Jones*, 661 S.W.2d 814, 816 (Mo.App.1983); *State v. Ransburg*, 540 S.W.2d 172, 174 (Mo.App.1976).

 On the other hand, where an appellate court *reversed* the refusal to strike for

cause, the venireperson gave *equivocal* answers. *State v. Hopkins*, 687 S.W.2d 188 (1985); *State v. Land*, 478 S.W.2d 290, 291 (Mo.1972); *State v. DeClue, supra.* The present case is similar to the facts in *State v. Merritt*, 589 S.W.2d 359 (Mo.App.1979). The *Merritt* court said that the venireperson "never unequivocally denied that the failure of [the defendant] to testify would prejudice him." *Id.* at 361. The court further pointed to the fact the venireperson raised the question on his own. "It was obvious [he] was concerned about this matter or he would not have raised the question on his own after a separate subject matter had been fully discussed ..." *Id.* Likewise, the venireperson in the present case spoke up after Brooks' attorney asked a "catchall" question, *i.e.* was there any reason that might prohibit them from serving as a fair juror. Even when the court tried to rehabilitate her with a question about following rules of law, the venireperson continued to show doubt.

The court in *State v. Leipus*, 675 S.W.2d 896, 899 (Mo.App.1984), perhaps best summarized the rule:

When a prospective juror ultimately states unequivocally that he can be impartial, and when the entirety of the voir dire makes it reasonable for the court to believe the potential juror, the court's exercise of discretion on a motion to strike for cause should not be disturbed on appeal. *However, this rule has no application where the answers of the prospective juror are equivocal and disclose uncertainty about his ability to be impartial.*

Thus it is clear the trial court abused its discretion in refusing to strike this venireperson. Based upon her answers, the better practice would have been to have sustained the challenge for cause. However, review of this point does not stop here.

The Missouri Supreme Court said in *State v. Draper, supra*, at 863, that "although errors in the exclusion of potential jurors should always be on the side of caution, reversal is required *only if the defendant has been prejudiced.*" Similar-

ly in *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), cert. denied, — U.S. —, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983), the supreme court said the trial court's decision on qualifications of a venireman, "will not be disturbed absent a clear abuse of discretion and real probability of injury to the complaining party." *See also State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984). In the past it appears the cases which relied on this proposition all dealt with a venireperson's partiality to testimony from police officers, but then the officer's testimony was not critical to the case. *See State v. Butler*, 660 S.W.2d 225, 227 (Mo.App.1983); *State v. Harrell*, 637 S.W.2d 752, 757 (Mo.App.1982). Here the concern was with the venireperson's prejudice against Brooks if he did not testify. But in fact Brooks *did* testify at trial. The Fifth Amendment establishes a defendant's privilege against self-incrimination, but this privilege may be waived when he becomes a witness in his own behalf. *State v. Byrd*, 360 S.W.2d 614 (Mo.1962). Any abuse of discretion on the trial court's part not to strike the venireperson was cured when Brooks decided to take the stand. Brooks does not even hint of his making an election to testify because the juror in question actually served on the jury. If such was the case it would have been incumbent upon the defendant to have made a record as to his intention to have not testified but for this juror's presence on the jury. This point is therefore denied. The judgment is affirmed.

All concur.