STATE of Missouri, Plaintiff–
Respondent,

v.

Donald STANLEY, Defendant–
Appellant.

No. 25598.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 20, 2004.

Rosalynn Koch, Office of State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General; Stephanie Morrell, Assistant Attorney General, Jefferson City, for respondent.

JEFFREY W. BATES, Judge.

Donald Stanley ("Defendant") was charged by amended information with the class C felony of burglary in the second degree in violation of § 569.170.[1] After a jury trial, Defendant was convicted of this offense. Because he was a prior and persistent offender, he received a sentence of 20 years imprisonment. Defendant appeals, presenting a single point relied on. He contends that the trial court committed plain error in refusing to strike venireperson Charlotte West ("West") for cause based on her statement during *voir dire* that she would want Defendant to testify if he were innocent. Although we determine that the trial court did err in refusing to strike West for cause, this error was cured when Defendant voluntarily chose to testify on his own behalf at the trial. Therefore, we affirm the trial court's judgment.

## I. Facts of the Offense and Procedural History

■ Defendant does not challenge the sufficiency of the evidence to support his conviction. We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Wright,* 941 S.W.2d 877, 879 (Mo.App.1997). Viewed from that perspective, the favorable evidence supporting the State's case against Defendant is set out below.

On August 21, 2002, Poplar Bluff police officer Ed DeGaris ("Officer DeGaris") was on patrol on the city's east side. At around 12:45 a.m., he responded to a radio dispatch that a silent alarm was sounding at Frosty's Drive–In. The alarm was triggered by motion sensors that were activated by someone moving around inside the building. Officer DeGaris arrived at the drive-in about one minute after he received the dispatch. He was the first officer to arrive at the scene. When he was between 50 and 100 feet from the Frosty's parking lot, he observed the Defendant running away from the drive-in. Defendant, who was about 30 feet away from the building, was wearing jersey gloves and holding a hammer in his right hand. Officer DeGaris was able to observe these details about the Defendant's appearance because the headlights of the squad car were shining directly on Defendant. He ran off of the parking lot and came toward Officer DeGaris, who stopped his car and opened the driver's side door. Defendant ran into the car door and either dropped or threw down the hammer in his hand. He then continued running away with Officer DeGaris in pursuit. During the chase, Officer DeGaris watched Defendant take off the gloves he was wearing and throw them down onto the ground. Officer DeGaris followed Defendant across a highway and into an alley where he was found hiding behind some cinder block and a trash can that had been knocked over. When Officer DeGaris found Defendant, Defendant remarked, "[y]ou've got me." Officer DeGaris handcuffed Defendant and took him

---

1. All references to statutes are to RSMo 2000 unless otherwise indicated.

back to the squad car. Officer DeGaris then retrieved the hammer, which was laying on the ground near the car, and the gloves he had seen Defendant throw down while he was running. These items were placed in the squad car for later tagging as evidence. The hammer, which had a red fiberglass handle and a rusty top, had fragments of glass on it.

Poplar Bluff police officer Don Trout ("Officer Trout") also helped investigate this incident. He arrived at the drive-in a few minutes after he received a radio dispatch that there was a burglary in progress at that location. Officer DeGaris and Defendant were both present when Officer Trout got there. He secured the premises until the owner of the drive-in, Terry Mizell ("Mizell"), arrived. When Officer Trout and Mizell examined the interior of the building, they observed that pieces of asphalt from the parking lot had been used to break out two large windows in the building. Two chunks of asphalt were found inside. The drive-in was undergoing remodeling at the time, and Mizell had left two of his hammers inside the building when he finished working between 8:00 and 10:00 p.m. the prior evening. One had a yellow handle, and the other had a red handle. As Mizell and Officer Trout inspected the premises, Mizell noted that his old red-handled hammer was missing. He later identified the hammer recovered by Officer DeGaris as the missing hammer. The next morning, Mizell also discovered that the jukebox in his building would no longer accept coins. An inspection of the machine, which had been working the day prior to the burglary, revealed that someone had been banging and prying on it, and a keyed-entry door on the bottom of the machine had been smashed inward. Mizell relayed this additional information to the police.

At trial, Defendant testified on his own behalf. Although he denied involvement in the burglary at Frosty's Drive-In, he admitted that: (1) he was present at the drive-in when police arrived; (2) he started running as soon as he saw a police car approach; (3) the jersey gloves recovered at the scene belonged to him; and (4) he threw these gloves down onto the road as he was running away because they could be used to commit a burglary.

At the close of the evidence, the jury found Defendant guilty of burglary in the second degree. Because of Defendant's prior felony convictions for burglary and assault, he received a 20 year sentence as a prior and persistent offender. Defendant filed a timely notice of appeal.

## II. Facts Relevant to the Issue on Appeal

The sole issue presented by Defendant's appeal is whether the trial court committed plain error in denying Defendant's motion to strike venireperson Charlotte West for cause. The facts pertinent to this claim of error are set out below.

During the *voir dire* examination of the venire by Defendant's counsel, Mr. Collier, the following colloquy occurred between Collier and the venire concerning Defendant's right not to testify at the trial:

MR. COLLIER: People have several fears and one of them is public speaking. I guess that's one of the biggest there is speaking in front of people. **My fear is if Mr. Stanley exercises his right not to testify on the stand that someone here may hold that against him. Is there anyone here who requires to hear what Mr. Stanley has to say?**

VENIREPERSON LAW: I would like to hear what he had to say.

MR. COLLIER: Juror No. 25?

VENIREPERSON LAW: Yes, sir. I would like to know what he had to say on his behalf.

MR. COLLIER: Okay. Could you give me a reason as to why he would not take the stand?

VENIREPERSON LAW: Well, it's that old thing there in the back of your head if you don't speak a lot of times there is a little bit of guilt that may be in you so I think you may need to explain yourself to someone as to why you may or may not be guilty.

MR. COLLIER: That's one reason. Anyone else think of a reason he may not testify? Juror No. 30.

VENIREPERSON SHELTON: Thirty. Because he may be guilty.

MR. COLLIER: Okay, that's always a possibility. Thank [sic] for your honesty. If he does not testify would you think that he, would you think he was guilty?

VENIREPERSON SHELTON: I would start leaning that way, yes.

MR. COLLIER: So, you basically would require him to testify because of that?

VENIREPERSON SHELTON: I would like to hear him.

MR. COLLIER: Okay. Juror thirty-one.

VENIREPERSON SPARKMAN: Twenty-nine.

MR. COLLIER: Twenty-nine, I'm sorry.

VENIREPERSON SPARKMAN: I'm not completely sure I understand the question.

MR. COLLIER: The law places the burden of proof upon the state to prove he is guilty. The law gives him the right to testify or not to testify. That choice is entirely up to Mr. Stanley. If he executes that right not to testify would you think he was guilty?

VENIREPERSON SPARKMAN: No. If I understand the question right it would influence my opinion, I would consider it one of many, many factors, but it wouldn't be a major deciding factor.

MR. COLLIER: Okay, thank you for your honesty, sir. Juror No. 33.

VENIREPERSON YOUNG: Thirty-three. I think I would probably have the same problem.

MR. COLLIER: You would think he was guilty?

VENIREPERSON YOUNG: I would lean that way.

MR. COLLIER: Anyone else? Okay, Juror No. 28.

VENIREPERSON WEST: **Twenty-eight, Charlotte West. I would think that if he thought he was innocent enough he needs to say so. I would want to know where he was. He was being charged for a certain thing and I would want to hear him say yea or nay.**

MR. COLLIER: **Can you think of any reason why he would not testify, other than guilt?**

VENIREPERSON WEST: **Just because the other side is trying to prove him, you know, without a doubt.**

MR. COLLIER: Okay, thank you. Anyone else? Juror No. 26.

VENIREPERSON REESE: Twenty-six, yes. Can you tell me why he wouldn't speak for himself?

MR. COLLIER: He might have a speech impediment or scared of the prosecutor on cross-examination.

VENIREPERSON REESE: Yeah, but if you are innocent and you want to get that out wouldn't you be the better person to tell?

MR. COLLIER: Probably.

VENIREPERSON REESE: I represented myself in court for a ticket and I have no law degree and I have nothing and I went up there and did it, so—

MR. COLLIER: Okay, we appreciate your honesty. Not everyone gets to speak that well. Thank you. Juror No. 24.

VENIREPERSON CRANDELL: I don't think, if I was charged with anything I don't know if I would, I don't know that I would take the stand just because someone may not like the way I sound or the way I look or, you know, for some reason they might, someone on the jury might know someone who knows me that doesn't like me. I don't know. There might be some reason I wouldn't take the stand so I would understand why he wouldn't.

(Bold emphasis added.) We have set out this rather lengthy discussion in full so that venireperson West's responses can be considered in context and compared to the responses given by other members of the venire to the same inquiry. At the conclusion of the foregoing exchange, defense counsel moved on to other subjects. Thereafter, neither the prosecutors nor the trial court asked West any further questions concerning her opinion about a defendant who failed to testify in his own defense.

At the conclusion of *voir dire*, the trial court asked counsel to make their strikes for cause. As the prosecutors, Mr. Oesterreicher and Mr. Pierce, were making their strikes, the trial court noted that "[t]here were two or three on there that indicated that they felt the defendant should be required to testify. Does that cause—Anybody have any position on that?" That elicited the following responses from the prosecution:

MR. OESTERREICHER: Judge, from the state I think the problem is when it was asked there was [sic] no follow-up questions about whether or not they could lay some of those inferences aside and be fair and impartial so I'm not sure we have got a complete record concerning whether they are for or against or whether they can lay that aside, whether it's going to have an affect [sic].

MR. PIERCE: And in fairness if I remember, maybe I'm not remembering it correctly, but I don't think they have been given that instruction yet on no inference could be drawn from that, they are not allowed to do that, that kind of thing. I didn't speak up at that time. I usually do when it comes to those type of questions, but because it was right there on the line, but I would join with Mr. Oesterreicher in saying that if there is even a consideration of cause there should be some follow-up questions on these folks.

The trial court then requested Defendant's strikes for cause. During that process, Defendant's counsel moved to strike Juror No. 25, venireperson Law, because he would hold it against Defendant if he did not testify. The trial court granted this request. Defense counsel then moved to strike venireperson West:

MR. COLLIER: Next one would be No. 28 based on the fact she said she would require the defendant to testify.

THE COURT: Mr. Pierce.

MR. PIERCE: Our notes or my recollection is that she said she would like to see him do it so I would stand on the earlier statement of Mr. Oesterreicher and myself that it [sic] wasn't sufficient follow-up to determine that

she would not be able to be fair and impartial and put that out of her mind and again ask the Court, if you so choose, to bring her in and follow up with it.

THE COURT: Mr. Collier.

MR. COLLIER: I was of the opinion that she would vote to convict if the defendant did not testify.

THE COURT: My notes on Charlotte West, No. 28, was she would like to see the defendant testify, but she did not in her answer use any language that would indicate to me that she would draw an inference from his failure to testify. So, I'm going to deny your request to strike for cause No. 28.

Defense counsel then moved to strike Juror No. 30, venireperson Shelton, for the same reason as venireperson West. The trial · court sustained this challenge for cause. At the conclusion of the jury selection process, venireperson West was seated on the jury.

At the close of the State's case, the trial court held a hearing in chambers concerning whether Defendant intended to testify:

THE COURT: Okay, we are on the record. Mr. Stanley, I want to make just a brief record here. Your attorney tells me that he intends to call you as a witness in the case.

MR. STANLEY: Yes, sir, Your Honor.

THE COURT: And, of course, the jury has been instructed and will be instructed again not to infer anything from your failure to testify. Is it your intention to testify?

MR. STANLEY: Yes, sir, Your Honor, I fully intend to testify.

THE COURT: Okay. And you understand that you are not required to?

MR. STANLEY: Yes, sir.

THE COURT: And you understand, I'm sure, from your attorney talking to you that your testifying may subject you to some cross-examination?

MR. STANLEY: Yes, sir, I understand.

THE COURT: Okay. I just wanted the record to show that Mr. Stanley indicates that he has been fully advised by his attorney and he has made the decision on his own freely and voluntarily to choose to exercise his right to testify in the defendant's case.

During that hearing, neither Defendant nor his attorney indicated in any fashion that Defendant felt compelled to testify because the trial court had overruled Defendant's motion challenging Juror West for cause. Thereafter, Defendant testified on his own behalf and denied any involvement in the burglary.

### III. Discussion and Decision

As Defendant concedes in his brief, the alleged error by the trial court in failing to strike venireperson West was not included in Defendant's motion for new trial. Therefore, the issue is not preserved for ordinary review. *State v. Pargo,* 109 S.W.3d 700, 701 (Mo.App.2003). Defendant requests that we review for plain error pursuant to Rule 30.20.[2] This rule states, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

 Whether to review for plain error is a matter left to our discretion. *See*

---

**2.** All references to rules are to the Missouri Rules of Criminal Procedure (2003) unless otherwise indicated.

*State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App.2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). In order to be entitled to relief under the plain error rule, however, "[a] defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App.2000). The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on Defendant. *See State v. Cole,* 844 S.W.2d 493, 500 (Mo.App.1992); *State v. Lewis,* 809 S.W.2d 878, 879 (Mo.App.1991). The determination of whether plain error exists must be based on a consideration of the individual facts and circumstances of each case. *State v. Robinson,* 44 S.W.3d 870, 872 (Mo.App.2001). In this direct appeal setting, we cannot grant Defendant's request for a new trial based on the plain error rule unless the error was "outcome determinative." *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002); *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999).

■ A request for plain error review requires us to go through a two-step analysis. *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999). First, we determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Rhodes,* 988 S.W.2d 521, 526 (Mo. banc 1999); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). In effect, we must determine "whether, on the face of the claim, plain error has, in fact, occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001); *State v. Brown,* 97 S.W.3d 97, 100 (Mo. App.2002). If facially substantial grounds are found to exist, we then move to the second step of this analysis and determine whether manifest injustice or a miscarriage of justice has actually occurred. *See State v. Rogers,* 51 S.W.3d 879, 880 (Mo. App.2001).

■ We begin our analysis by deciding whether Defendant's claim that the trial court committed plain error in refusing to strike venireperson West for cause is facially substantial. We conclude that it is. "To qualify as a juror, the venireman must be able to enter upon that service with an open mind, free from bias and prejudice." *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989). As our Supreme Court stated in *State v. Storey,* 901 S.W.2d 886 (Mo. banc 1995), "[t]he critical question in a bias challenge is whether the venireperson unequivocally indicated an ability to evaluate the evidence fairly and impartially." *Id.* at 894. Where a venireperson's answer suggests a possibility of bias, that person is not qualified to serve as a juror unless, upon further questioning, he or she is rehabilitated by giving unequivocal assurances of impartiality. *See State v. Walton,* 796 S.W.2d 374, 377 (Mo. banc 1990). Moreover, a trial judge has a duty to make its own independent inquiry whenever a venireperson equivocates about his or her ability to be fair and impartial. *Id.*

When we examine venireperson West's responses during *voir dire* in light of these principles, we do not find that she gave the unequivocal assurances of impartiality necessary to qualify her to serve as a juror. Defense counsel specifically questioned the venire to determine whether anyone might hold it against Defendant if he did not testify and "requires to hear what Mr. Stanley has to say[.]" In response to this specific inquiry, venireperson West stated that if Defendant "thought he was innocent enough he needs to say so. I would want to know where he was. He was being

charged for a certain thing and I would want to hear him say yea or nay." In our view, this answer indicates bias because West would draw an adverse inference of guilt against Defendant if he failed to testify and proclaim his innocence. The one follow-up question West was asked by defense counsel did not dispel that opinion. The fact that West offered one alternative inference, besides guilt, that could hypothetically be drawn from a defendant's failure to testify in no way provided unequivocal assurance that *she* would not draw an improper inference of guilt herself if Defendant did not testify. At the very least, her response was equivocal on this issue, requiring further questioning to assure that she would not draw an improper inference of guilt if Defendant chose not to testify. At no point during the *voir dire* examination was West ever asked any questions by the State or the trial court which served to rehabilitate her and provide unequivocal assurance that she could be fair and impartial.[3] Absent such rehabilitation, venireperson West was not qualified to sit on the jury, and the trial court committed plain error in denying Defendant's motion to strike her for cause. *See State v. Holland,* 719 S.W.2d 453, 454–55 (Mo. banc 1986) (trial court erred in failing to strike venireperson who stated that she would like to hear defendant's side of the story and would have a hard time if he did not testify); *State v. Stewart,* 692 S.W.2d 295, 299 (Mo. banc 1985) (trial court erred in failing to strike for cause a venireperson who stated that she would like to hear from the defendant and who felt that an innocent man would testify on his own behalf); *State v. Bishop,* 942 S.W.2d 945,

948–50 (Mo.App.1997) (trial court erred in failing to strike for cause a venireperson who stated that she would have a problem with drawing no inference of guilt if defendant did not testify).

■ Having found Defendant's claim that the trial court committed plain error to be facially substantial, we move to the second step of the analysis: whether manifest injustice or a miscarriage of justice will inexorably result if this error is not corrected. We conclude that our denial of Defendant's request for relief under the plain error rule will not result in a manifest injustice or miscarriage of justice. Any potential prejudice that might have occurred because of the trial court's refusal to strike venireperson West for cause was cured when Defendant voluntarily chose to testify on his own behalf. We find *State v. Brooks,* 693 S.W.2d 211 (Mo. App.1985), and *State v. Williams,* 860 S.W.2d 7 (Mo.App.1993), dispositive on this issue.

In *Brooks,* the defendant appealed his conviction for second degree robbery. He asked for a new trial on the ground that the trial court committed reversible error by denying defendant's motion to strike for cause a venireperson who said she would expect an innocent person to testify on his own behalf. *Brooks,* 693 S.W.2d at 213. After that ruling occurred, however, the defendant testified and denied being involved in the robbery. The Western District of this Court concluded that the trial court abused its discretion in refusing to strike the venireperson for cause. *Id.* at 214. Nevertheless, no new trial was required because any potential prejudice

---

**3.** It is apparent from the record that the State fully understood venireperson West had not been asked the appropriate follow-up questions to determine unequivocally whether she could lay aside her opinion about wanting to hear from the Defendant and draw no inference of guilt if he chose not to testify. The prosecutors twice invited the trial court to question venireperson West further in order to make that determination, but the judge declined to do so.

created by the trial court's erroneous denial of the motion to strike was cured when defendant voluntarily chose to testify:

> Here the concern was with the venireperson's prejudice against Brooks if he did not testify. But in fact Brooks *did* testify at trial. The Fifth Amendment establishes a defendant's privilege against self-incrimination, but this privilege may be waived when he becomes a witness in his own behalf. Any abuse of discretion on the trial court's part not to strike the venireperson was cured when Brooks decided to take the stand. Brooks does not even hint of his making an election to testify because the juror in question actually served on the jury. If such was the case it would have been incumbent upon the defendant to have made a record as to his intention to have not testified but for this juror's presence on the jury.

(Italics in original; internal citation omitted.) *Id.* at 215.

Similarly, in *Williams,* the defendant appealed his conviction for stealing on the ground that the trial court erred in failing to sustain defendant's challenge for cause to a venireperson who equivocated during *voir dire* about whether she would be biased against the defendant if he chose not to testify at trial. *Williams,* 860 S.W.2d at 8. At the trial, however, defendant took the stand in his own defense and testified that he was in a different town when the theft occurred. This Court denied defendant's claim of error because any potential prejudice that might have resulted from the trial court's refusal to strike the offending venireperson for cause was cured by the defendant's voluntary decision to testify:

> *Brooks* controls the disposition of this appeal. This court holds that any abuse of discretion on the trial court's part in not striking venireperson Durham for cause was cured by defendant's testify-

ing in his own behalf before the jury. Defendant's point has no merit.

*Id.* at 9.

In the case at bar, Defendant voluntarily chose to testify on his own behalf, and he proclaimed his innocence in his testimony. As in *Brooks,* there is nothing in the record to suggest that Defendant's decision to do so was prompted by the trial court's decision not to strike venireperson West for cause. Accordingly, any possible prejudice that might have been created by the trial court's erroneous ruling on the motion to strike was cured. After examining all of the facts and circumstances of this case, we conclude that plain error relief pursuant to Rule 30.20 is not warranted. Therefore, the judgment of the trial court is affirmed.

PARRISH, J. and SHRUM, J., concur.