STATE of Missouri, Plaintiff–Respondent,

v.

Leroy L. NORMAN, Defendant–Appellant.

No. 25119.

Missouri Court of Appeals, Southern District, Division One.

Oct. 18, 2004.

Craig Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Leroy L. Norman ("Appellant") appeals his conviction for murder in the second degree, a violation of Section 565.021, and armed criminal action, a violation of Section 571.015.[1] Appellant raises three points on appeal. First, he argues the trial court abused its discretion in overruling his request for a mistrial when testimony was given contrary to the trial court's pretrial ruling on his motion in limine. Second, Appellant argues the trial court abused its discretion in excluding two photographs which would tend to implicate another as the murderer. Last, Appellant contends the trial court erred in giving an instruction because it was not supported by the evidence and had the effect of misleading and confusing the jury. We affirm.

### Facts and Procedural History

Appellant does not challenge in this appeal the sufficiency of the evidence presented by the State to sustain his conviction for second degree murder and armed criminal action. We consider all facts and make reasonable inferences in the light most favorable to the conviction and reject all contrary evidence and inferences. *State v. Stanley*, 124 S.W.3d 70, 72 (Mo. App. S.D.2004).

On July 22, 2000, Sandra Guzman, age 19, was staying with her parents in Carthage, Missouri. While her parents were out of town visiting relatives, Guzman, who had worked the night shift the evening before, awoke in the late afternoon. She decided to leave her house to visit her brother, who lived in an apartment over Mike's Bar. Guzman met, for the first time, Lauren 'Angel' Wallis ("Victim") who offered to buy beer for Guzman and some of her underage friends.

Guzman had not planned to have a party because she knew that her parents would not be pleased if they found out; however, Guzman, her friends and Victim went back to her house to drink the beer Victim had just purchased. After Guzman decided to invite other people to her house, she went back to her brother's apartment and also invited Andy Kelly and Martin McQuaid. They shared a joint of marijuana on their way back to the house. Guzman then saw other acquaintances and asked them to join her party. Appellant and his brother joined the party at this point with people drinking beer and smoking marijuana.

Victim became quite intoxicated and kept losing consciousness in the house. When Victim became conscious, she asked for her purse, which she had left at the apartment where she first met Guzman. Victim became belligerent when she could find no one to take her to get her purse. Guzman, trying unsuccessfully to get Victim to leave, asked Kelly for his help in removing Victim from her house. Kelly picked Victim up, carried her outside and placed her on the ground. Guzman then threatened to beat up Victim. Kelly and

---

**1.** All references to statutes are to RSMo 2000, unless otherwise indicated.

Guzman then threw Victim in the dumpster in hopes of humiliating her but Victim climbed out of the dumpster and returned to the party.

Guzman later told Kelly that she could obtain the drug, Ecstasy, from some people she knew in Springfield; she told Kelly she just needed to find a ride for the two of them. Appellant agreed to drive Guzman and Kelly to Springfield to obtain Ecstasy and to drive Victim home. Guzman rode in the passenger side of Appellant's truck with Kelly and Victim riding in the bed. Kelly stuck his head through the sliding rear window of the cab of the truck numerous times to complain about Victim. One time in particular, Kelly became so aggravated with Victim that he stuck his head through the sliding window to ask if he could kill Victim and insisted that Appellant pull the truck over on the side of the road.

Appellant did eventually pull the truck over at the Republic and Bois D'Arc exit; he brought the truck to a stop on TT Highway next to a low-water bridge. Appellant and Guzman exited the vehicle. Guzman saw Kelly hunched over Victim, who was screaming, in the bed of the truck. Kelly told Guzman he was killing Victim. Guzman went over to Appellant and told him what Kelly was doing. Appellant told Kelly to get Victim out of his truck, but when Victim refused to move, Kelly reached up and grabbed Victim's arm and yanked her out of the truck. The force caused Victim to loss her footing and she fell to the pavement. Victim stood up crying and began punching Kelly, who grabbed her and placed her in a chokehold. Victim became limp and collapsed to the pavement unconscious but still breathing. Appellant grabbed Guzman and made her watch as he placed his foot on Victim's chest. While Appellant held Victim in place with his foot, Kelly repeatedly kicked Victim in the head.

Kelly suggested that the three of them should just leave Victim there to find her own way home. Appellant then pulled out a knife and, as Guzman and Kelly both shouted, "No," slit Victim's throat. Appellant and Kelly then picked up Victim and tossed her body over the side of the low-water bridge into the stream below. Guzman, Kelly and Appellant got back into the truck and drove back to Carthage. Appellant was driving with Guzman riding in the passenger seat and Kelly in the bed of the truck. During the drive home Kelly and Appellant bragged about killing and Kelly suggested they go on a killing spree when they returned home. The three made a stop at a convenience store on the way back, but when Appellant and Guzman were ready to leave, they could not find Kelly. Appellant commented to Guzman that if Kelly ran off, he would have to cut his throat, too.

Appellant drove to Guzman's house, where he told his brother that they had been out driving around and had given Victim a ride home. Appellant and his brother drove the truck to Spot–Not, a local car wash, and washed the truck before returning home. Guzman called her parents, who told her to report the murder; she did so at the police station later that morning. The Carthage Sheriff's Department then notified Greene County Sheriff's Department of a possible homicide. Victim's body was discovered where Guzman described it would be. Despite the fact Victim suffered from numerous injuries, autopsy reports show that she bled to death from a laceration to the neck.

Kelly was arrested later that day wearing the same shirt he had been wearing the night before when Victim was killed. Two spots on Kelly's shirt tested positive with Victim's DNA profile. Officers also

stopped Appellant's truck based upon a description given to them by Guzman; however, Appellant was not driving the vehicle because he had loaned it to Demetrio Cortez to move some furniture. Upon initial surveillance of the truck during the vehicle stop, Detective Arnott noted a reddish-brown substance smeared on the back, on the bed, and outside the truck. He also observed, on the driver's side, spots toward the rear of the bed and on the outside close to the taillight. Arnott took photos of these areas and conducted an appropriate sample gathering of various sections to be tested in the lab. Arnott also spotted a knife in the console of the truck, which fit the description Kelly provided when questioned about the knife. Although testing on the reddish-brown substance on the truck revealed the possible presence of blood, testing on the knife produced a negative result for the presence of blood. Appellant's shoes were confiscated and tested, when he was arrested, for traces of Victim's DNA. Three spots on his shoes revealed matches to Victim's DNA profile.

### I. Mistrial Request

In Appellant's first point, he contends the trial court abused its discretion by not declaring a mistrial when Detective Arnott gave a voluntary, inadmissible statement that he had found handcuffs in Appellant's truck, which violated the trial court's ruling on a pretrial motion in limine. Appellant objected to the statement at trial, the court sustained his objection but refused to grant a mistrial. Instead, the trial court ordered the statement stricken from the record and instructed the jury to disregard the statement.

We review a ruling on a request for a mistrial for an abuse of discretion. *State v. Webber*, 982 S.W.2d 317, 323 (Mo. App. S.D.1998). The declaration of a mis-

trial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *Id.* "Testimony contrary to the court's ruling on a defendant's motion in limine does not, in itself, require the declaration of a mistrial." *Webber* at 322. A ruling on a motion in limine is interlocutory, it is subject to change during the course of trial. *State v. McCullum*, 63 S.W.3d 242, 259 (Mo.App. S.D.2001).

Appellant filed a motion in limine, which was granted, seeking to prevent the State from making reference to a pair of handcuffs which were found in Appellant's truck. During the cross-examination of Detective Arnott, however, defense counsel, after a discussion concerning Detective Arnott's initial inspection during the vehicle stop, inquired about other reddish-brown substances found in and on the truck.

Q. [DEFENSE COUNSEL]: Other than those locations, did you observe reddish-brown substances anywhere else in the pick-up truck?

A. [DETECTIVE ARNOTT]: Other— on the vehicle, itself or—

Q. [DEFENSE COUNSEL]: On the exterior or the interior of the vehicle.

A. [DETECTIVE ARNOTT]: Can I review my report?

Q. [DEFENSE COUNSEL]: Yes.

THE COURT: You may step down if you like.

A. [DETECTIVE ARNOTT]: Thank you, sir. There was another item recovered inside the truck, which was a pair of handcuffs, and it had an unknown type substance on it, also.

[DEFENSE COUNSEL]: Judge could we approach the bench?

THE COURT: Yes

AT THE BENCH:

[DEFENSE COUNSEL]: Judge, this witness has just volunteered some information that the Court ruled in a pretrial motion in limine was not admissible, and it was not in response to a question and—

. . . .

The question was specific of whether he found blood or a reddish-brown substance, not handcuffs. And he volunteered that he'd found handcuffs. It was not responsive to the specific question asked him, and I—and I'd object to the response and ask that—the Court to sustain my objection to his response.

[PROSECUTOR]: He invited that response. Now, whether or not he asked the question the officer indicated that there was a red substance on the handcuffs, and that's what he asked him. That's what he got when he opened the door to that.

THE COURT: Well, I agree. That was in response to defense counsel's question that he said that. I realize this was in the motion in limine, but that was not solicited by the State. It was solicited by his—by the question of defense counsel.

Now, I will sustain some kind of an objection to his response and order it stricken from the record. I think it's—

[DEFENSE COUNSEL]: And, then, Judge, I'd ask for a mistrial that-just as-

THE COURT: Well, a mistrial will be denied.

[DEFENSE COUNSEL]: And I'd ask that the Court instruct the jury to disregard that last comment of the witness. I have to ask for relief, so I'd ask for that.

THE COURT: I will do that.

PROCEEDINGS RETURNED to open COURT

THE COURT: Okay. The jury will disregard the last statements by Detective Arnott. I won't go into them, just the last statements and his last answer, and I'll order that stricken from the record.

Appellant argues that the mention of the handcuffs in Appellant's truck is evidence of bad character which was irrelevant evidence. Appellant further argues, even if the evidence was relevant, the prejudicial effect far outweighed the probative value. Appellant contends the prejudice to Appellant from the admission of this evidence was so great that a mere striking of the evidence with an admonition to the jury to disregard the statement was insufficient relief to him.

█ To consider whether or not an inadmissible statement had a prejudicial effect, the reviewing court examines five factors:

(1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or whether the prosecutor deliberately attempted to elicit the comments;

(2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution;

(3) whether the comments were vague and indefinite, or whether they made specific reference to crimes committed by the accused;

(4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and

(5) whether in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*State v. Witte*, 37 S.W.3d 378, 383 (Mo. App. S.D.2001).

■ First, the statement by Detective Arnott was a voluntary response to defense counsel's question, not the prosecutor's question. Defense counsel inquired whether the officer observed reddish-brown substance anywhere else in the pickup truck. Defense counsel further explained his question as "on the exterior or the interior of the vehicle." The handcuffs contained a substance and were, in fact, in the interior of the vehicle. Appellant cannot contend that the statement was elicited through some deliberate attempt on the part of the prosecutor to admit the evidence. Second, the statement was singular and isolated as neither the defense counsel nor the prosecution emphasized the statement or touched upon it later in the trial. Once the trial court sustained defense counsel's objection to the statement and admonished the jury, no other evidence regarding handcuffs in the truck was elicited or commented on. Third, Detective Arnott's mention of the handcuffs was vague; he testified that he found a pair of handcuffs, and "it had an unknown type substance on it, also." There is no indication that handcuffs were used in any other bad acts or were used in this crime. Fourth, while the trial court did not grant a mistrial, it did grant defense counsel's request that the statement be stricken from that record and the jury instructed to disregard that statement.

Occasionally, at trial, a witness will unexpectedly utter an inadmissible statement. This is not an uncommon occurrence. *State v. Silas*, 885 S.W.2d 716, 720 (Mo.App. W.D.1994). The trial court is in the best position to determine whether a specific incident had a prejudicial effect on the jury because it has observed the event first-hand. *State v. Mahoney*, 70 S.W.3d 601, 606 (Mo.App. S.D.2002). Due to the fact the trial court is in this position, it can also ascertain what measures, if any, are necessary to cure the possible prejudicial effect. *Id.* at 607. Based upon the overwhelming evidence presented by the State, including the testimony from two eyewitnesses, the reddish-brown substance on the truck, and the knife, the volunteered statement concerning handcuffs in the truck did not play a decisive role in the determination of guilt by the jury. Point I is denied.

## II. Exclusion of Photographs

Appellant contends in his second point, the trial court abused its discretion when it did not allow admission of two photographs, Exhibits D and E, which showed a reddish-brown substance present in the rear and bed of the truck. Appellant's theory at trial was that Kelly murdered Victim and the photographs would support that theory because Kelly was the only one riding in the bed of the truck.

■ A reviewing court will only intercede with trial courts' ruling regarding the admissibility of evidence if there has been a clear abuse of discretion. *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999). The trial court abuses its discretion if a ruling is obviously against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the natural sense of justice and indicates a lack of careful consideration. *State v. Lebbing*, 114 S.W.3d 877, 881 (Mo.App. S.D. 2003), *State v. Weekley*, 92 S.W.3d 327, 333 (Mo.App. S.D.2002). We review for prejudice and not mere error. Therefore, the trial court's ruling will be affirmed unless it was so prejudicial as to deprive the appellant of a fair trial. *State v. Charlton*, 114 S.W.3d 378, 383 (Mo.App. S.D.2003). Although there is a rebuttable presumption that excluded admissible evidence is prejudicial, this presumption is rebutted when the error is harmless beyond a rea-

sonable doubt. *Felder v. State*, 88 S.W.3d 909, 914 (Mo.App. S.D.2002).

 Several factors are considered when evaluating whether the trial court's exclusion of evidence was harmless beyond a reasonable doubt. While examining the facts and circumstances of the particular case, we take special note of all evidence presented, the nature of the charge and the role the excluded evidence would have played in the defense's theory. *State v. Sanders*, 126 S.W.3d 5, 23 (Mo.App. W.D. 2003), *Felder v. State*, 88 S.W.3d 909, 914 (Mo.App. S.D.2002). "When evidence challenged on constitutional grounds is cumulative of other properly-admitted evidence, the disputed evidence could not have contributed to the defendant's conviction and is harmless beyond a reasonable doubt." *State v. Lopez*, 128 S.W.3d 195, 202 (Mo. App. S.D.2004). We conclude that Exhibits D and E were merely cumulative and the exclusion did not prejudice Appellant.

 Detective Arnott testified to the fact the photographs represented the areas of the truck where reddish-brown substances were found; he testified he observed the substances near the end of the truck. When shown other photographs, Detective Arnott noted that there were other reddish-brown spots throughout the back of the truck and floor of the bed from where he took samples. He testified that when he processed the truck he divided it into three sections and took a sample from each area of reddish-brown substance within each divided section. He also stated he took photographs of all areas of the reddish-brown substance before he processed the truck. The detective gave testimony that all spots appeared similar in color but had a different pattern and they were all located in the bed of the truck. Further, testimony indicated blood matches from Appellant's shoes and Kelly's shirt. Therefore, although the trial court did not allow the photos to be admitted into evidence, the jury still heard the evidence described concerning the reddish-brown substance through testimony from Detective Arnott. Appellant was not prejudiced by the exclusion of Exhibits D and E. Point II is denied.

### III. Sufficiency of Evidence for Disjunctive Jury Instruction

 In his third point, Appellant states the trial court plainly erred in giving Instruction No. 6, which included a disjunctive submission which he claims mislead and confused the jury because there was not sufficient evidence to support each prong of the submission. Specifically, Appellant argues there was insufficient evidence to support the conviction that he acted together or aided in the murder of Victim. Instruction No. 6 states:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 23rd day of July, 2000, in the County of Greene, State of Missouri, the defendant, Andy Kelly or Sandra Guzman caused the death of Lauren Wallis by cutting her throat and

Second, that it was the defendant's purpose to cause the death of Lauren Wallis, then you are instructed that the offense of murder in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that murder in the second degree, the defendant acted together with or aided Andy Kelly or Sandra Guzman in committing that offense, then you will find the defendant guilty under Count I of murder in the second degree

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you find the defendant guilty of murder in the second degree under Count I, you will assess and declare one of the following.

1. Life imprisonment
2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

Appellant concedes that objection concerning the disjunctive point was not properly preserved for appeal because, although he objected to the "acting together or aided" language in the jury instruction at trial, he objected on the basis of notice rather than on the lack of evidence to support the language. *State v. Brown,* 97 S.W.3d 97, 101 (Mo.App. W.D.2002); *Boyd v. State,* 86 S.W.3d 153, 159 (Mo.App. E.D.2002).

 An issue not preserved for appellate review may be considered only if the court finds that manifest injustice or miscarriage of justice has resulted therefrom. *Adams v. Squibb,* 128 S.W.3d 149, 152 (Mo.App. S.D.2004); *State v. Hensley,* 83 S.W.3d 681, 687 (Mo.App. S.D.2002); *State v. Reynolds,* 72 S.W.3d 301, 305 (Mo.App. S.D.2002). The reviewing court has the discretion to review for plain error or not. *State v. Stanley,* 124 S.W.3d 70, 76 (Mo.App. S.D.2004). In order for Appellant to receive relief under the plain error rule, he bears the burden of proof to not only show prejudicial error occurred, but also show the error so substantially affected his rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected. *Id.* The individual facts and circumstances of each case are taken into consideration in determining whether plain error exists and prejudice will not be

found if there is ample other evidence to support the conviction. *State v. Presberry,* 128 S.W.3d 80, 86 (Mo.App. E.D.2003).

Appellant argues there was insufficient evidence to support the conviction that he "acted together or aided" in the murder of Victim. In reviewing the sufficiency of evidence, the appellate court does not act as a " 'super juror' with veto powers." *State v. Grim,* 854 S.W.2d 403, 414 (Mo. banc 1993). On the contrary, the trier of fact is given great deference. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998). In this appeal, our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

 When a disjunctive instruction is submitted to the jury, each alternative must be supported by evidence which, if true, would support a verdict for the party submitting the instruction. *Hudson v. Whiteside,* 34 S.W.3d 420, 427 (Mo.App. W.D.2000). When examining the evidence for instructions, the reviewing court views the evidence in the light most favorable to the party submitting the instruction. This means taking all favorable inferences drawn from the evidence and disregarding all evidence and inferences to the contrary. *State v. Gilbert,* 103 S.W.3d 743, 748 (Mo. banc 2003). We must also keep in mind that the instruction can be based upon any theory supported by evidence. *State v. Hughes,* 84 S.W.3d 176, 182 (Mo.App. S.D. 2002). Therefore, in order for this court to find that the trial court plainly erred in giving Instruction No. 6, the challenging party must demonstrate that the instruction misdirected, misled or confused the jury. *See Choate v. Natvig,* 952 S.W.2d 730, 734 (Mo.App. S.D.1997).

 In order to submit the accomplice liability theory to the jury, the evidence

must have supported a finding that (1) someone killed the victim; (2) this person acted with the intent to cause serious physical injury; and (3) the person acted together with or aided and encouraged the other person with the purpose of furthering the commission of the murder. *State v. Brown,* 958 S.W.2d 574, 580 (Mo.App. W.D.1997).

 Appellant argues that the State's theory was that Appellant killed Victim by himself, and, therefore, insufficient evidence exists to support a submission that Appellant "acted together with or aided" Kelly or Guzman in causing Victim's death. While it is true that the State presented evidence that Appellant alone slit Victim's throat, there was additional evidence submitted and argued by the State to support a finding that Appellant stopped his truck in a remote area at the request of Kelly to stop the truck so Kelly could kill Victim. There was also conflicting testimony as to whether Kelly threatened to kill Victim if she did not perform oral sex. There was further testimony that Appellant held Victim as Kelly repeatedly kicked her and that after Victim's throat was slit, Appellant assisted by throwing Victim's body over a bridge and into a stream. Appellant and his brother then washed the truck which was where the knife was found. Appellant also ignores his defense which was that someone else actually slit Victim's throat. There was sufficient evidence to support a finding that Appellant acted together with or aided Kelly or Guzman in causing Victim's death. Point III is denied. The judgment of conviction is affirmed.

GARRISON, P.J., and PREWITT, J., concur.