**STATE of Missouri, Plaintiff–Respondent,**

v.

**Dennis M. SALNAVE, Defendant–Appellant.**

**No. 26868.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 18, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 8, 2006.

Application for Transfer Denied April 11, 2006.

Craig A. Johnston, Asst. State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Dennis M. Salnave (defendant) was convicted, following a jury trial, of child molestation in the first degree, a class B felony. § 566.067.[1] The date of the alleged offense was June 26, 2003. This court affirms.

E.S. was seven years old on the date of the charged offense. She was with defendant, her grandfather, at his residence when R.M., her mother, entered the residence. R.M. had been at the residence a few minutes earlier. At that time E.S. and defendant had been sitting in a chair watching cartoons. When R.M. returned, neither E.S. nor defendant was in the room where they were before. R.M. observed that the bedroom door was closed. R.M. opened the door. She saw E.S. lying on the bed without a shirt and with her legs spread apart. Defendant had his knees on the bed below E.S.'s feet. Defendant was fastening the right suspender strap of the overalls he was wearing. Defendant got off the bed and went into the

---

1. References to statutes are to RSMo 2000.

bathroom. R.M. told her daughter to get her shirt on and go home. E.S. got dressed. Her mother took her home. E.S. was crying as they returned to their apartment.

R.M. placed a telephone call to the police reporting the incident. Officer Danny McNew, Licking, Missouri, Chief of Police, responded. He talked to E.S. He testified, "She stated that [defendant] had removed her clothes, rubbed his thing on her. Stated, must have knocked the breath out of her, rolled her over and stuck his thing in her butt." Chief McNew was asked if he asked E.S. where defendant had rubbed his thing on her. He answered "[y]es"; that "[s]he indicated her crotch and then also verbally said her butt."

Defendant was taken to the police station. He was advised of his *Miranda* rights.[2] After initially denying molesting E.S., defendant said he lay on top of E.S. and rubbed his penis on her vaginal area, then rolled her over and rubbed his penis on her buttocks. He wrote a statement saying he "took [his] thing out and started playing around with [E.S.], rub on her butt and vagina."

Section 566.067 provides:

1. A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact.

2. Child molestation in the first degree is a class B felony unless the actor has previously been convicted of an offense under this chapter or in the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening man-

ner, or the offense is committed as part of a ritual or ceremony, in which case the crime is a class A felony.

Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."[3]

Defendant presents two points on appeal. Point I argues the trial court erred in failing to strike a juror for cause. Point II argues the trial court erred in refusing to give a proposed jury instruction tendered by defendant.

■ Point I is directed to the trial court's failure to strike Juror Hathaway. The bases for defendant's allegation of error were questions asked and answers given during defendant's part of voir dire. Ms. Hathaway told the court she was "[c]urrently teaching." She taught kindergarten. The following questions were asked and the following answers given.

Q. All right. Anything about your involvement with children and this particular case that would prevent you from being fair and impartial?

JUROR HATHAWAY: I would hope not. I don't know. I mean, you deal with kids and what they say and their perspective and if you weren't to listen to them carefully, then I don't know whether you'd be much of a teacher. So you do have things that you deal with in cases you deal with.

Q. So obviously, you have quite a bit of dealings with children on a daily basis?

---

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** § 566.010(3) was amended in 2002. Because this offense was alleged to have oc-

curred June 26, 2003, the text of § 566.010(3), as amended in 2002, is the applicable statute.

JUROR HATHAWAY: Every day, yes.

Q. Knowing that, are you, you know, your relationship with children, are you more likely to tend to want to believe the child?

. . .

JUROR HATHAWAY: I don't know. I don't know this child. I mean, I, I deal with adults, and I believe adults too, but I deal with little kids every day and when they tell me something I have to take what they say as true.

Q. All right. Have you ever been called into a situation where you've got to kind of question what the child says?

JUROR HATHAWAY: That's right.

Q. That's something you've dealt with, obviously, in your personal life as well as that of a teacher?

JUROR HATHAWAY: Correct.

Q. How do you go about determining whether or not the child is telling the truth?

JUROR HATHAWAY: Ask them why they did something instead of saying did you do it. If you try to come back around, well, why did that happen and can you give me details and you try to watch their behavior and everything.

Q. One of the things, since you deal with children, one of the things you're careful about is you don't want to put words in the children's mouths, is that correct?

JUROR HATHAWAY: Correct.

Q. Because, why is that? Let me ask that?

JUROR HATHAWAY: Because you want to know their side of the story. You want to be there to help them.

Q. All right, and part of that is you want to find out actually what happened from their perspective, not necessarily from your perspective, right?

JUROR HATHAWAY: Correct.

At the conclusion of voir dire, defendant's trial attorney told the trial court he would "like to address juror number 26." Juror No. 26 was Ms. Hathaway. Defendant's attorney told the trial court:

She indicated that based on her experience she would tend to, I think the exact testimony was she'd have to, she thought she'd have to believe the child. When I was asking her questions based on the nature of her dealings with the children she felt, as far as her in her personal experience, she thought she had to believe the child. She didn't go as far, though, as to say that in this particular matter, but I think how she deals with it in her personal life is an indicator of how she would address it in this particular case, Judge.

Although defendant's trial attorney did not specifically state he was challenging the juror for cause, the trial court obviously understood that was his purpose in discussing the juror. The trial judge's response to defense counsel's remarks included a reference to Ms. Hathaway and another juror not being stricken. The judge characterized his understanding of Ms. Hathaway's answers to the questions asked as expressions of the point of view of a teacher, not that she would not treat the evidence in the case fairly or believe one side's case and not the other's. He did not understand the answers to be that she was going to believe everything any witness in the case would say.

Point I contends the trial court's failure to remove Ms. Hathaway from the jury was an abuse of discretion "because Hathaway did not unequivocally indicate an ability to evaluate the evidence fairly and impartially"; that "her answers suggested a bias in favor of children." General ques-

tions asked the entire panel of prospective jurors included the state's inquiry as to whether there was anyone who felt for any reason that he had or had not mentioned, after having time to give his questions additional thought, that he could not fairly and impartially listen to the evidence in the case and decide the case based only on the evidence and the testimony that they would hear in the courtroom. No one responded. Additionally, defendant's trial attorney inquired whether anyone on the panel would believe what a nine-year old was saying "just because she's saying it." No one on the panel responded.

■■■ "Whether bias or prejudice exists is a finding of fact, the determination of which 'is essentially one of credibility, and therefore largely one of demeanor.'" *State v. Leisure,* 749 S.W.2d 366, 372 (Mo. banc 1988), *quoting Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). The qualification of a prospective juror is made on the basis of the entire examination, not by a single response. *State v. Clayton,* 995 S.W.2d 468, 475 (Mo. banc), *cert. denied,* 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999). "Because the trial judge is better positioned to make that determination than are we from the cold record, doubts as to the trial court's findings will be resolved in its favor." *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983). Considering the entirety of voir dire inquiry, this court finds no abuse of trial court discretion in denying defendant's challenge for cause directed to Ms. Hathaway. Point I is denied.

■■■ Point II is directed to the allegation that the trial court refused to give an instruction tendered by defendant. The instruction was refused and numbered "Instruction No. *X*" and filed in the circuit court file. It stated:

Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.

If you find that a statement was made by the defendant, <u>and that at that time he understood what he was saying and doing</u>, and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.

However, if you do not find and believe that the defendant made the statement, <u>or if you do not find and believe that he understood what he was saying and doing,</u> or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.

(Emphasis added.)

The tendered instruction is from MAI–CR3d 310.06. The part of Instruction No. X that is underlined is optional language as prescribed in the Notes on Use. The trial court gave Instruction No. 6. Instruction No. 6 differed from Instruction No. X in that it did not include the language that is underlined in Instruction No. X as quoted above.

The words that are underlined appear in parentheses in MAI–CR3d 310.06. Notes on Use No. 3 to MAI–CR3d 310.06 directs, "The matter in parentheses in the second and third paragraphs should be included in the instruction if there is evidence that the defendant did not understand what he was saying or doing at the time of the statement, whether because of mental disease or defect or because of intoxication,

drugged condition, or other mental incapacity, latent or induced, temporary or permanent."

Trial was held, according to the trial court's docket sheets, on November 10 and 12, 2004. At the close of the first day of trial, the docket sheet reflects "instruction conference held." The next docket entry is dated November 12, 2004. It states, "Instructions read as trial continues." The transcript of the November 12 proceedings, however, includes a statement by the trial court "that the defendant has offered instruction No. X, which is 310.06, another version of 310.06 that was submitted by the defendant Wednesday, and it's my intention to submit to the jury instruction No. 6, 310.06 that leaves out the language in the parentheses of the MAI, and you may make your record."

Defendant's trial attorney told the trial court:

> Your Honor, I believe the instruction, and for the record we will refer to it as instruction X, is supported by the evidence in that defendant testified that he didn't understand what he was writing, understand what he was doing at the time he was writing this statement. I believe it's supported by his testimony and as to that, Your Honor, I would just stand on that.

The state responded that it did not believe there was evidence that defendant did not know what he was doing; that the record did not support a basis for including the language conducive with the notes on use for the pattern instruction.

The statements that defendant asserts entitled him to have Instruction No. X read to the jury are statements defendant made to Chief McNew. He made oral statements to Chief McNew and gave a written statement. When Chief McNew arrived at defendant's residence, defendant stated he knew he was going to get in trouble but all he was doing was wrestling around. Defendant agreed to go with Chief McNew to the police department to talk about what had occurred. After defendant initially denying molesting E.S., Chief McNew asked defendant why E.S. would lie about what had occurred. Defendant then said he was not going to blame E.S. He told Chief McNew he lay on top of E.S. and rubbed his penis on her vaginal area; that he had rolled her over and rubbed his penis on her butt. He gave a written statement that stated he "took [his] thing out and started playing around with [E.S.], rub on her butt and vagina." Chief McNew testified that he did not help defendant with the language in the statement; that he did not suggest what defendant should write. He witnessed defendant sign the written statement.

Defendant testified at trial. He was asked on cross-examination if E.S. and her mother "just made this up." He answered that he "couldn't say that." He said he did not know if he "did anything or not." He stated he did not remember.

Defendant was shown the hand-written statement that was admitted in evidence and asked if he had written it. He answered that it looked like his handwriting. After more questioning, defendant said, "Well, I guess I did write it." After additional questions concerning the content of the written statement, defendant added, "I remember writing, maybe writing this out at the time, but I mean I don't remember actually doing what it says I did." He was asked if anyone forced him to write the statement. He answered, "Oh, no, sir."

Defendant's testimony was that he wrote the statement. He does not question that he made the other statements that Chief McNew stated were made. What defendant argues is that he does not

remember doing the acts described in those statements. Defendant's evidence does not constitute a claim that he did not understand what he was saying or doing at the time he gave the statements because of mental disease or defect or because of intoxication, drugged condition, or other mental incapacity. What defendant claims is that he did not do the things that he admitted in his statements, a claim the jury did not find in his favor.

■ Defendant was not entitled to have the jury instructed in the manner set forth in Instruction No. X. "[B]efore any party is entitled to an instruction, there must be evidence to support its submission, and absent that evidentiary basis, it is not error to refuse the submission of an instruction." *State v. Wilson,* 105 S.W.3d 576, 586 (Mo.App.2003). The trial court did not err in refusing to give the instruction. Point II is denied. The judgment is affirmed.

BATES, C.J., and RAHMEYER, J., concur.