STATE of Missouri, Plaintiff–
Respondent,

v.

Michael X. GARRISON, Defendant–
Appellant.

No. SD 29050.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 2009.

Rosalynn Koch, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, and Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Michael X. Garrison ("Defendant") was charged by amended information with committing violence against an employee of the Department of Corrections, pursuant to section 217.385, and assault in the third degree against another prison employee, pursuant to section 565.070.[1] Defendant was found guilty by a jury on both counts, sentenced to eight years' imprisonment on the charge for committing violence, to be served consecutive to other sentences Defendant is currently serving, and fined $1,000 on the charge for third-degree assault. Defendant appeals, claiming the trial court plainly erred in not striking two venirepersons for cause and in allowing the State to cross-examine a defense witness concerning the contents of a Department of Corrections' report. Finding no plain error, we affirm.

### Factual and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his convictions. The evidence, viewed in a light most favorable to the verdict, established that on May 26, 2006, while an inmate at the South Central Correction Center, Defendant assaulted two prison employees before he could be subdued and handcuffed. Both correctional officers suffered injuries, including abrasions, scratches and bruises. One of the officers, David Martin, testified that he was on duty at the

---

1. References to statutes are to RSMo 2000, unless otherwise indicated.

main entrance of housing unit number 3 when he saw Defendant coming from the dining hall wearing a heavy coat on a day when the temperature was around ninety degrees. Martin observed a "very large bulge" in Defendant's right-hand pocket. When Martin questioned what Defendant had in his pocket, Defendant initially denied having anything. When Martin pressed him further, Defendant pulled out a bread wrapper. Martin had no idea at the time what was contained in the bread wrapper. As Defendant tried to push Martin aside to enter the housing unit, Martin closed the door to the unit, blocking Defendant's way inside. Defendant removed his coat and threw it aside. Martin was able to call for backup before Defendant charged at him, knocking him across his chest and into a wall. Defendant struck Martin about the head and face with his fists, causing him to fall to his knees. As other officers arrived, correctional officer Roy Higashi ordered Defendant to stop. However Defendant kept swinging and hit Higashi in the chest before Higashi and another officer were able to subdue him. It was later determined that the bread wrapper Defendant removed from his pocket contained sausage, cheese, and bread allegedly stolen from the prison kitchen.

On the first day of trial, Defendant informed the trial court that, for reasons unrelated to the points raised in this appeal, he did not wish to be present in the courtroom during his trial. After advising Defendant on his right to be present and extensively questioning him regarding his

decision to absent himself, the trial court ordered Defendant held in jail during the trial and further advised Defendant that he would be brought into the courtroom at any time he wished to be present. The trial court also directed defense counsel to keep Defendant informed as the trial progressed. The trial then proceeded without the presence of Defendant, and he was found guilty and sentenced as previously noted.[2]

Additional facts will be supplied hereafter as necessary to address each of Defendant's points.

### Standard of Review

Both of Defendant's points request review for plain error pursuant to Rule 30.20.[3] Whether to grant Defendant's request for review for plain error is at the discretion of this court. *State v. Stanley*, 124 S.W.3d 70, 76–77 (Mo.App.2004). In making this determination, we employ a two-step analysis. *Id.* at 77. We must first determine, based on a consideration of the facts and circumstances of each case, " 'whether, on the face of the claim, plain error has, in fact, occurred.' " *Id.* (quoting *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001)). Plain error is evident, obvious and clear error. *State v. Shaffer*, 251 S.W.3d 356, 358 (Mo.App.2008). "If facially substantial grounds are found to exist, we then move to the second step of this analysis and determine whether manifest injustice or a miscarriage of justice has actually occurred." *Stanley*, 124 S.W.3d at 77. "Relief under this standard

---

**2.** At various intervals throughout the trial, the trial court allowed defense counsel to visit with Defendant to determine whether he would change his mind and appear at trial, but Defendant continued to refuse to attend. After the State rested its case, the trial court had Defendant brought before the court, outside the presence of the jury, in order to

include in the record Defendant's determination of whether or not he wished to testify. At that time, Defendant declined to testify and informed the court again that he did not wish to be present at the trial.

**3.** All references to rules are to Missouri Court Rules (2008).

requires that a defendant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *State v. Walker*, 972 S.W.2d 623, 625 (Mo.App.1998).

### Discussion

### Failure to Strike Venirepersons for Cause

Defendant's first point states:

The trial court plainly erred in overruling [Defendant's] motion to strike venire persons Goris and Oliver, because this ruling denied [Defendant] his right to due process of law and to a fair trial by an impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, and resulted in manifest injustice, in that the jurors' statements showed that they would infer [Defendant's] guilt from his absence at trial.

During Defendant's voir dire examination, counsel for Defendant addressed the venire panel extensively regarding the possibility of Defendant's absence at trial. Initially, counsel asked the panel, "[Defendant] isn't in the courtroom right now. Does anybody believe that [Defendant] has to be here for you to find him not guilty?" Receiving no response from the panel, counsel asked, "Does anybody believe that [Defendant] has to be here for you to listen to the evidence fairly and to make a fair decision?" When at least one panel member responded affirmatively, counsel proceeded to question individual panel members who indicated they had concerns about Defendant's potential absence from the trial.

After several members of the panel responded, counsel posed the following question to the remainder of those waiting to

respond: "You will hear evidence today, but you may not see [Defendant] in the courtroom. If [Defendant] isn't in the courtroom, is that gonna make it harder for me to show his innocence?" Venireperson Turner responded, "Yes.... I think he should be here, too, and—unless there's a reason he couldn't be here like medically. And I do think it would probably make me less likely to believe he's innocent." Defense counsel asked Turner, "If he's not here, you are less likely to believe his innocence?" Turner responded, "Correct." Counsel then called upon panel member Goris, and the following exchange occurred:

> VENIREPERSON GORIS:.... Also I would like to say the same. Basically I'd like to see his body language. I mean, I—if I just get a statement from him or we hear a statement, if I don't [ ] to see his body language, I—I might be less likely to believe it.
>
> [COUNSEL]: So if [Defendant] isn't in the Court, you're less likely to believe his innocence or perhaps more likely to believe he's guilty?
>
> VENIREPERSON GORIS: It would be more difficult for me to make that judgment, yes, it would.
>
> [COUNSEL]: Okay. Thank you.
>
> Anybody else in the second section? Yes—
>
> VENIREPERSON OLIVER: I believe he should be here. But why—why isn't he going to be here?
> * * * *
> [COUNSEL]: I can't disclose that at this time, ma'am. I'll—
>
> VENIREPERSON OLIVER: But you would disclose it at the trial?
>
> [COUNSEL]: I can't say that. I can't say. All I can tell you is [Defendant] isn't here now and he may not be here for his trial. If he isn't here for his

trial, will that make you more likely to assume he's guilty?

VENIREPERSON OLIVER: I don't know. I—without—without hearing the evidence, I don't know.

[COUNSEL]: Okay. If [Defendant] isn't here, is that gonna make it harder for me to show you he's innocent?

VENIREPERSON OLIVER: Well, that's up to you. I don't know.

When voir dire was completed, defense counsel requested the trial court to strike venirepersons Goris and Oliver due to their responses on the issue of Defendant's absence at trial. The trial court denied both requests.

On appeal, Defendant argues that he "was denied his right to a trial by a fair and impartial jury when two jurors on his panel had told the court that they would hold it against the defense that [Defendant] did not appear at trial[,]" and "[t]he trial court plainly erred in allowing these jurors to serve." Citing to *James v. State,* 222 S.W.3d 302, 305 (Mo.App.2007), for the proposition that "[a] criminal defendant must be afforded a full panel of qualified jurors before he is required to use a peremptory challenge[,]" and that "[t]he denial of a full panel of qualified jurors is the denial of the right to a jury trial[,]" Defendant contends that he "was denied his Sixth Amendment right to a fair and impartial jury, resulting in a miscarriage of justice." Defendant concedes that this claim was not preserved for appellate review because it was not presented in Defendant's motion for new trial. *See* Rule 29.11(d). Thus, he requests that we review his claim for plain error pursuant to Rule 30.20.

In determining whether plain error has, in fact, occurred—the first step in a plain error analysis—we note that generally, "[a] trial court's ruling on a challenge for cause will be upheld on appeal unless it is clearly against the evidence and is a clear abuse of discretion." *Joy v. Morrison,* 254 S.W.3d 885, 888 (Mo. banc 2008). While a trial court's refusal to sustain a valid challenge for cause constitutes reversible error, it is within the trial court's wide discretion to determine the qualifications of a venireperson. *State v. Smith,* 655 S.W.2d 745, 747 (Mo.App.1983). Absent a showing of clear abuse of discretion and a real probability of harm to the defendant, we will not disturb a trial court's ruling on this issue. *Id.*

"To qualify as a juror, the [venireperson] must be able to enter upon that service with an open mind, free from bias and prejudice." *Stanley,* 124 S.W.3d at 77 (quoting *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989)). "Mere equivocation is not enough to disqualify a juror." *Joy,* 254 S.W.3d at 890. "If the challenged venireperson subsequently reassures the court that he [or she] can be impartial, the bare possibility of prejudice will not deprive the judge of discretion to seat the venireperson." *Id.* at 890–91. "Initial reservations expressed by venirepersons do not determine their qualifications; consideration of the entire voir dire examination of the venireperson is determinative." *Id.* at 891.

Although not mentioned anywhere in Defendant's brief, at the conclusion of defense counsel's voir dire, the trial court allowed the prosecuting attorney to address the venire panel regarding the issue of Defendant's possible absence at trial:

[PROSECUTING ATTORNEY]: Ladies and gentlemen, just briefly, [defense counsel] touched on this earlier in the fact that [Defendant] might not be present during the trial.

Does everyone here understand that a defendant's right to be present in a

criminal proceeding is just that, it's a right? Does everyone understand that?

(NO RESPONSE).

[PROSECUTING ATTORNEY]: That no one can be forced to exercise their rights. We all have rights, constitutional or otherwise, that are granted us by law. But one of those rights is the right to exercise it or not.

And do you understand that [Defendant's] presence or absence in the courtroom is not evidence of any kind? Is there anyone here who does not understand that the fact that he is present or is not present is not evidence in the case?

(NO RESPONSE).

[PROSECUTING ATTORNEY]: I see no hands.

Is there anyone here who could not put aside the fact that [Defendant] either chooses to exercise or not exercise his right to be present? Anyone here who could not put that issue aside and hear this case, make their decision based on facts, the evidence and the testimony that is actually presented in this case?

(NO RESPONSE).

[PROSECUTING ATTORNEY]: Do I need to re—rephrase that again? Is there anyone here who could not put aside [Defendant's] presence or absence in making their decision of guilt or innocence?

(NO RESPONSE).

[PROSECUTING ATTORNEY]: And again, Your Honor, I see no hands.

■ "Whether bias or prejudice exists is a finding of fact, the determination of which 'is essentially one of credibility, and therefore largely one of demeanor.'" *State v. Salnave*, 185 S.W.3d 704, 708 (Mo. App.2006) (quoting *State v. Leisure*, 749 S.W.2d 366, 372 (Mo. banc 1988)). The trial court's finding on a challenge for cause is made on the basis of the entire examination rather than a single response, and the trial court is in a far better position "to make that determination than are we from the cold record," and "doubts as to the trial court's findings will be resolved in its favor." *Salnave*, 185 S.W.3d at 708 (quoting *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983)). "Where a venireperson's answer suggests a possibility of bias, but upon further questioning that person gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify such rehabilitated juror nor deprive the trial court of discretion to seat such venireperson." *State v. Clark–Ramsey*, 88 S.W.3d 484, 489 (Mo.App. 2002).

■ A venireperson's silence may constitute an unequivocal assurance of impartiality sufficient for the purpose of rehabilitation. *State v. Clark*, 55 S.W.3d 398, 405 (Mo.App.2001); *State v. Brown*, 669 S.W.2d 620, 623 (Mo.App.1984). *See also Edgar v. State*, 145 S.W.3d 458, 463 (Mo. App.2004). Here, as in *Clark*, the challenged venirepersons' silence following the prosecutor's attempt to rehabilitate the panel was sufficient, within the trial court's discretion, to unequivocally assure their impartiality and to qualify them to serve as jurors. We find no abuse of the trial court's discretion in failing to strike these two venirepersons for cause, and thus, no evident, obvious, and clear error—plain error—exists here. Accordingly, we decline to review Defendant's claim for plain error. Point one is denied.

### Cross-examination of Defense Witness

■ Defendant's second point alleges that: "The trial court plainly erred in permitting the state to read from a purported conduct violation report stating that that [sic] defense witness Dejuan Thompson had taken [Defendant's] coat and stolen

food." [4]  Defendant claims that this report was inadmissible testimonial hearsay evidence.

Defense witness Dejaun Thompson, another inmate in the South Central Correction Center, claimed to have witnessed the incident which led to the charges against Defendant. On direct examination, Thompson testified that he was outside the entrance to housing unit number 3 when he heard Officer Martin tell Defendant to stop. Thompson related that he saw Defendant stop and Officer Martin grab Defendant's arm. When Defendant "kind of walked off[,]" Martin jumped on Defendant's back. According to Thompson, other officers then ran out of the door and jumped on Defendant "and picked him to the concrete." At that point, Thompson said he and the other inmates were told to go inside. Thompson testified that he did not see Defendant "throw a punch" or kick or charge at any of the officers. On cross-examination Thompson denied seeing Defendant's coat at any time during the incident and denied that he took the cheese, bread, and sausage in Defendant's coat back to his cell, even though he admitted that he got "written a violation" for possessing the food and "had to do DESEG time in the hole" as a consequence of that violation.

During Thompson's cross-examination, the prosecutor asked:

Q. So if an officer put in his report[ [5]] that he—that he went back to your cell, that you gave him [Defendant's] coat and told him what you are looking for is under my mattress, you're saying that's not a true statement?

A. That's not a true statement.

Q. Did you tell Officer Mendenhall that, quote, I found the food near the jacket in the Sally port?

A. No, sir, I didn't. I never told Mr. Mendenhall nothing besides these—those sausages on my locker.

Defendant asserts not only that these two questions elicited inadmissible testimonial hearsay evidence, but that, in addition, in the absence of an objection by defense counsel, the trial court plainly erred in not *sua sponte* directing the witness not to answer them. In considering this assertion, we first turn to whether, on the face of the claim, plain error—evident, obvious and clear error—has in fact occurred. *Stanley,* 124 S.W.3d at 77; *Shaffer,* 251 S.W.3d at 358.

The State argues that the two questions are not inadmissible testimonial hearsay evidence because they were not evidence in the first instance, but rather were part of laying the foundation for impeaching Thompson by his prior inconsistent statements. The State contends that Thompson's alleged possession of defendant's coat

4. Defendant's point also challenges the trial court's failure to prevent the State from asking "the witness to directly comment on the credibility and testimony of another, which allowed the state to attack Thompson by setting up contradictory statements that were written for a[sic] not made under oath." Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c). Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal. *Day v. State,* 208 S.W.3d 294, 295 (Mo.App.2006). Because this second claim of error is not fully developed as a point relied on as required by Rule 84.04(d)(1), however, we consider it to be mere surplusage and will address only Defendant's primary claim of error.

5. Previously in the cross-examination, the prosecuting attorney had handed the witness a copy of the report in response to which the witness volunteered that: "You don't have to read it, because I already know what's on the paper, sir."

and stolen food and his subsequent punishment for possession of that food were circumstances demonstrating the witness's bias against the State, which, when coupled with his denials of possession of the same, made Thompson subject to impeachment by his prior inconsistent statements admitting possession. We agree.

■ Defendant makes no argument that the subject matter of the cross-examination—attacking the bias of the witness—was in any way improper. Nor could he, for a witness' bias in favor of or against a party is always relevant. *State v. J.L.S.*, 259 S.W.3d 39, 44 (Mo.App.2008). Thompson's possession of Defendant's coat and the food items immediately after the incident, if believed by the jury, would impact not only Thompson's credibility in the face of his denials, but would also tend to prove that he held a bias in favor of Defendant by concealing Defendant's original theft of the food and against the State for its punitive action taken against him for subsequently possessing the food. To prove this bias to the jury, as well as attacking Thompson's credibility, the State had the right to attempt to impeach Thompson with his alleged prior inconsistent statements. *State v. Vaughn*, 501 S.W.2d 839, 842 (Mo. banc 1973).

■ "One seeking to impeach a non-party witness must lay a foundation by asking the witness whether he made the prior statement, quoting it and the precise circumstances under which it is made." *State v. Woods*, 723 S.W.2d 488, 507 (Mo.App.1986). In the instant case, this is precisely the action the State was attempting—to lay a foundation to impeach Thompson with his prior inconsistent statements that he gave Defendant's coat to the officer, that he had told the officer that what he was looking for was under his mattress, and that he told the officer that he had "found the food near the jacket in the Sally port." The State simply used the report to make Thompson aware of the precise circumstances under which the alleged prior statements were made and for quoting each statement to him. As such, the state was engaged in laying a proper foundation for impeaching the witness with his prior inconsistent statements and was not offering the report or the witness's alleged prior statements into evidence. Had the witness admitted making them, the statements would have been in evidence and Thompson would have stood impeached. *Id.* His denials, however, did not make the alleged prior statements evidence, but rather, the State, if it still desired to impeach the witness, was required to present evidence showing the witness did, in fact, make the prior inconsistent statements. *Id.* In the absence of such evidence, Thompson was not impeached, and the two questions asked in laying the foundation to impeach him were not evidence for consideration by the jury. *See Maloy v. Cabinet & Bath Supply, Inc.*, 187 S.W.3d 922, 927 (Mo.App.2006) (questions asked in an effort to impeach on the basis of prior inconsistent statements are not evidence).

Because the questions asked by the State were not *evidence*, they could not be inadmissible testimonial hearsay *evidence*, as argued by Defendant. As proper questions in laying a foundation for impeaching the witness with alleged prior inconsistent statements, the asking of these questions can not serve as the basis for any trial court error, plain or otherwise. Point two is denied.

### Decision

The trial court's judgment is affirmed.

PARRISH, J., and RAHMEYER, J., concur.