JUDGE BERNARD concurring in part and dissenting in part.
¶ 43 I respectfully dissent from the majority's conclusion in section I. I concur with the rest of the opinion.
¶ 44 During its introductory remarks, the trial court stated, as is pertinent here, that "the defendant is never compelled to testify, and the fact that he does not cannot be used against him or as an inference of guilt and should not prejudice him in any way."
¶ 45 During her voir dire, defense counsel asked the prospective jurors whether, despite this instruction, they would have "real concerns as to whether ... you can find [defendant] not guilty" if he did not testify.
*841 Jurors 7, 10, and 12 all responded indicating that they harbored such concerns.
¶ 46 The responses of these three jurors obviously raised the question whether they would follow the pertinent law during the trial and during their deliberations. But I would conclude, for the following reasons, that the trial court did not abuse its discretion when it denied defendant's challenges for cause concerning them. See People v. Merrow, 181 P.3d 319, 321 (Colo.App.2007) ("[W]hen, as here, a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly, a challenge for cause must be granted in the absence of rehabilitative questioning or other counter-balancing information.").
I. The Court Instructed All Jurors to Volunteer Relevant Information During Voir Dire, and the Jurors in This Case Did So Repeatedly
¶ 47 The trial court told the jurors in its opening remarks that "it is very important that you listen to the questions asked and that you answer them to the best of your ability." The court added that, when it asked questions, "I may ask a very general open-ended question and ask all those that it applies [to] to raise their hand[s]. And then you may ... answer it."
¶ 48 The court repeated this direction a short time later when it stated, "I'm going to ask some questions ... of you as a whole. And if ... you have an answer to ... these questions, please just raise your hand."
¶ 49 By my count, the prospective jurors, some of them more than once, followed this procedure almost seventy times during the court's initial questioning before the attorneys began their own inquiries. As a result, I would conclude that each prospective juror clearly understood, from the beginning of voir dire, that he or she should volunteer a response when the court asked a pertinent question.
¶ 50 The pattern of jurors volunteering information continued during defense counsel's questions. She ultimately questioned fifteen prospective jurors about whether they had "concerns" if defendant did not testify. Although the record is not entirely clear because it does not indicate all the jurors who may have raised their hands in response to defense counsel's questions, many jurors volunteered their responses. It appears to me that jurors 7, 10, and 12 were among these volunteers.
II. After Jurors 7, 10, and 12, Among Others, Expressed Their Concerns, the Trial Court Instructed the Prospective Jurors That They Could Not Use Defendant's Failure to Testify Against Him
¶ 51 After the first twelve jurors spoke with defense counsel about this issue, including jurors 7, 10, and 12, the court instructed the jury that a "very important part of our judicial system is that the [defendants] never ha[ve] to present any evidence or testify themselves. And you cannot use th[e] fact that a defendant does not take the stand as any evidence one way or the other." The court added:
• "The only evidence that matters is the evidence that comes from the witness stand";
• "[A] defendant for whatever reason ... can choose not to take the stand";
• "If a defendant does not take the stand, that is the defendant's decision"; and
• "[T]he jury is instructed that [it] cannot guess [what] that reason is."
III. The Court and Defense Counsel Asked Narrow and Focused Questions That Would Prompt Reasonable Jurors to Volunteer a Response If They Still Had Concerns About Finding Defendant Not Guilty If He Did Not Testify
¶ 52 After instructing the jury about the pertinent law, the court asked the jurors two questions. Was there "anyone" who would convict defendant despite the court's instruction that, if the jury found that the prosecution did not prove all the elements of the offense beyond a reasonable doubt, then the jury was required to acquit him? Was there "anyone" who would find defendant guilty "because he didn't testify even though there wasn't evidence to prove the case?"
¶ 53 One juror, number 25, volunteered a response to these questions. He stated that, *842 if defendant did not testify, then defendant must have "something to hide ... [a]nd to me that's guilty." The court excused this juror for cause.
¶ 54 Defense counsel then asked the prospective jurors a similarly focused question. "[I]s there anyone back here, some hands were raised before, who [has heard] ... what the [j]udge had to say, [and who] still feels that if you don't hear from [defendant] that would be a problem for you reaching a verdict of not guilty in this case?" (Emphasis added.)
¶ 55 Three jurors responded. One stated that if "I don't hear [defendant's] story, I could not" acquit him. A second agreed with that statement. But a third replied, "I was glad to have the added information about how to approach it." Jurors 7, 10, and 12 did not respond.
¶ 56 Jurors 7, 10, and 12 were obviously included in the word "anyone," which was contained in the court's and defense counsel's questions. And defense counsel's question further inquired whether, after listening to the court's instruction, any juror still felt that the juror's ability to acquit defendant would be impaired if he did not testify.
¶ 57 I would conclude that the direct and focused phrasing of the court's and defense counsel's questions indicates that the prospective jurors would only have responded affirmatively if they would not follow the court's instructions. In this context, silence means to me that jurors 7, 10, and 12, would have followed the court's instructions.
¶ 58 Their silence in the face of the court's and defense counsel's questions further convinces me that jurors 7, 10, and 12 were following the rules of voir dire that the court had laid out in its opening remarks, and which had been followed repeatedly during voir dire. We know that other jurors volunteered answers to the court's and defense counsel's questions, and the record does not suggest that Jurors 7, 10, and 12 had difficulty speaking up.
¶ 59 In my view, reasonable jurors in these circumstances would only have answered these questions verbally if they still harbored concerns about the prospect that defendant might not testify. See State v. Akins, 867 S.W.2d 350, 355-56 and n.13 (Tenn.Crim.App.1993) ("Silence on the juror's part when asked a question reasonably calculated to produce an answer is tantamount to a negative answer.... The test is whether a reasonable, impartial person would have believed the question, as asked, called for a juror response under the circumstances.").
IV. Opinions from Other Jurisdictions That Engage in Similar Analysis Support the Conclusion that I Would Reach
¶ 60 The facts of this case are much like those in United States v. Martinez-Martinez, 369 F.3d 1076, 1082-83 (9th Cir.2004). There, a juror raised his hand to express discomfort with a legal provision that an attorney had explained. But the Court of Appeals concluded that he had been rehabilitated, even though he was silent when the prosecutor asked the jurors the following question: Was there "anybody in here who would not be able to put aside [his or her] daily experiences ... and apply the facts that you will hear from the witnesses ... to the law that [the trial judge] will provide to you at the end of this trial?"
¶ 61 Similarly, State v. Garrison, 276 S.W.3d 372, 377 (Mo.Ct.App.2009), held that "[a] venireperson's silence may constitute an unequivocal assurance of impartiality sufficient for the purpose of rehabilitation." Defense counsel there asked the prospective jurors whether they would be "concerned" if defendant did not appear at his trial. Several answered that they might be concerned.
¶ 62 The prosecutor in Garrison asked the jury a series of questions about a defendant's right not to be present in court. These questions included vocabulary that was similar to the words the trial court and defense counsel used here. There were inquires such as: (1) "does everyone ... understand" that the defendant could choose to exercise his right not to attend the trial; (2) "do you understand" that his presence or absence was not evidence; (3) "is there anyone here" who did not understand that concept; and (4) "is there anyone here" who could not put aside the defendant's potential absence in evaluating the testimony and evidence that would be submitted? There was no response *843 to any of these questions, and the prosecutor noted that he saw "no hands."
V. Colorado Law Supports the Conclusion That I Would Reach
¶ 63 It is fair to say in this case that jurors 7, 10, and 12 "displayed a preconceived opinion that defendants in general should testify in their own defense." People v. Vecchiarelli-McLaughlin, 984 P.2d 72, 76 (Colo.1999). But a juror's "equivocation and ambivalence" about that issue do not necessarily support a challenge for cause. Id .
¶ 64 It is one thing if a juror "display[s] persistent doubts" about whether the juror can be "fair in the absence of testimony from the defendant." Id . It is another thing if the "examination" of jurors or "other evidence" satisfies the trial court that the juror will " 'render an impartial verdict according to the law and the evidence submitted to the jury at trial.' " Id . at 75 (quoting § 16-10-103(j), C.R.S.2013 ).
¶ 65 We do not have the trial court's perspective on prospective jurors. We do not know whether jurors 7, 10, and 12 were hesitant or emphatic when they expressed their concerns. Unlike the trial court, we do not know what the demeanor of jurors 7, 10, and 12 was when they expressed those concerns, or when the court instructed them, or when the court and defense counsel asked them the three questions, or when the other jurors supplied answers to those questions.See Carrillo v. People, 974 P.2d 478, 486 (Colo.1999) (The abuse of discretion standard "recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing those judgments based on a cold record.").
¶ 66 The expression of the "preconceived opinion" by Jurors 7, 10, and 12 that defendant should testify was comparatively brief. I would not characterize their statements as "persistent." See Vecchiarelli-McLaughlin, 984 P.2d at 76. And there is no indication in the record that they "persisted" in their preconceived opinions "despite efforts by the court to rehabilitate them." See id .
¶ 67 I would conclude, under the circumstances here, that the silence of jurors 7, 10, and 12 in response to the court's and defense counsel's questions was an assurance that they would follow the court's instructions. See People v. Drake, 748 P.2d 1237, 1243 (Colo.1988) (A trial court may consider "a prospective juror's assurance that he or she can fairly and impartially serve on the case."). I would not, as a result, "overturn the trial court's resolution of [the] challenge[s] for cause" in this case because I would conclude that the record contains a "basis for supporting" the trial court's decisions. People v. Harlan, 8 P.3d 448, 462 (Colo.2000), overruled on other grounds by People v. Miller, 113 P.3d 743 (Colo.2005).